Everett MEEKER, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–579A128.

Court of Appeals of Indiana, First District.

Oct. 2, 1979.

---

Harriette Bailey Conn, Public Defender, Marcia L. Dumond, Deputy Public Defender, Indianapolis, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Gregory Alan Clark, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant Everett Meeker was convicted in the Vigo County Court on two counts of battery and one count of resisting law enforcement. He brings this appeal asserting (1) an erroneous admission of evidence of prior convictions, and (2) a failure

to provide a hearing on the issue of indigency, pursuant to IC 1971, 35–1–44–8 (Burns Code Ed., Repl.1979).

## FACTS

On the night of November 28, 1977 Officer Perrelle saw Meeker operating a motor vehicle. Due to previous encounters with Meeker, the patrolman believed him to be driving with a suspended license. He stopped the defendant and advised him that he was under arrest. Meeker then jumped from the car and a struggle ensued. Two more officers arrived and the struggle continued briefly, but Meeker was restrained and transported to jail. Upon arriving there, the deputy-in-charge opened the patrol car door, at which time Meeker struck him with a night stick. Meeker was again restrained and placed into jail. Later, the deputy-in-charge and Meeker had another brief scuffle.

Meeker was tried in the Vigo County Court on five counts of battery, one count of disorderly conduct, and one count of resisting law enforcement. A second cause, arising from the same incident and charging Meeker with driving while his license was suspended, was consolidated. Three counts of battery were subsumed into the single count of resisting law enforcement; defendant was found guilty. The court found him guilty of two counts of battery against the deputy-in-charge. The court further found him not guilty of driving while license suspended and not guilty of disorderly conduct.

## ISSUES

1. Whether the trial court committed reversible error when, over Meeker's timely objection, it admitted evidence of his prior conviction; and

2. Whether it was error for the trial court to impose costs and fines without first determining Meeker's ability to pay them pursuant to IC 35–1–44–8.

*Issue One*

■ Meeker asks us to consider whether the trial court committed reversible error

when, over his timely objection, it admitted evidence of a prior conviction.

Of course, the witness from whom such evidence was elicited and the purpose for which it was employed are crucial factors in considering this type of issue. In the instant case, the challenged evidence came in through the testimony of Officer Perrelle, a State's witness, and was proffered in an attempt to rehabilitate the witness after he had been impeached (during defense counsel's cross-examination) on the grounds of prejudice or bias.

On cross-examination, the following exchanges took place:

"Q. How many times have you arrested the defendant previously?

A. I believe once. Maybe twice.

COURT: Beg your pardon?

A. Once or twice.

Q. How many times have you stopped him previously?

A. I believe only once.

Q. Is it true that you have told other individuals, uh, that you do not like Everett Meeker and that somehow you are going to get him?

A. No, it's not.

\* \* \* \* \* \*

Q. Have you or have you not stated to any individual that you do not like Everett Meeker and that you are going to get him?

A. I haven't said I was going to get him.

Q. I assume by your response, then that you have said that you do not like Everett Meeker?

A. Is that a personal opinion or—what—what do you mean?

Q. I'm not asking you whether it's a personal opinion. I'm only asking you—have you or have you not stated that?

COURT: Did you ever tell anybody you didn't like Meeker. That's the question, right?

Q. Yes.

A. I probably have."

On redirect examination, Officer Perrelle testified as follows:

"Q. Uh, you, uh, were asked by uh, Mr. Fleschner if you had ever arrested this defendant previously?

A. Uh, yes.

Q. You said you had?

A. Yes.

Q. When was that?

A. August 24th.

COURT: When?

A. August 24th.

Q. What year?

A. 1977.

Q. Do you remember what were the— what you charged him with at the time that you arrested him on that occasion?

FLESCHNER: Your Honor, I'd object at this time. I merely requested whether he had arrested. I think it's irrelevant as to the offenses charged.

COURT: All right, uh, I think it's like our former foreign policy. It's the open door policy we have here. So I will overrule the objection.

Q. Do you recall the charges that you placed against him on that previous arrest?

A. Yes, I do.

Q. What were—what were they, if you recall?

A. Driving while license suspended, assault and battery on police, I believe it was a reckless driving.

Q. Anything else?

A. Destruction of city property.

Q. Uh, did that matter go to trial?

A. Yes, it did.

Q. And, uh, were you a witness in the trial?

A. Yes, I was.

Q. Were—were you present at the time the jury returned its verdict?

A. I don't believe I was.

Q. Do you know what the results of that trial were?

A. Yes, I do.

Q. Tell the Judge what the result of— of some of those charges were?

A. I believe it was a guilty verdict of A & B on police. I'm not sure of the others."

In *Fletcher v. State*, (1975) 163 Ind.App. 286, 323 N.E.2d 261, we affirmed the conviction of the defendant-appellant holding that, notwithstanding the rule propounded in *Ashton v. Anderson*, (1972) 258 Ind. 51, 279 N.E.2d 210 (civil), and followed in *Dexter v. State*, (1973) 260 Ind. 608, 297 N.E.2d 817 (criminal), which provides that for impeachment purposes the only prior convictions which are admissible are those for crimes involving dishonesty or false statement and those for crimes which by statute would have rendered a witness incompetent, we would apply the maxim stated in *King v. State*, (1973) 155 Ind.App. 361, 292 N.E.2d 843, that the harm arising from evidentiary error is lessened if not totally annulled when the trial is by the court sitting without a jury. We were reversed on that point, *Fletcher v. State*, (1976) 264 Ind. 132, 340 N.E.2d 771, with the Court opining:

". . . The presumption has no place *in this case*. . . . It is a curious ratiocinative process which presumes that the trial court will disregard that which it holds admissible *over specific objection*. . . ." (Our emphasis)

340 N.E.2d at 773.

In *Fletcher*, the defendant took the stand *in his own behalf*. On cross-examination he was asked: "Mr. Fletcher, were you convicted of theft in January, 1972?" Defendant objected with *specific reference* to the *Dexter* decision, but was overruled.

 In the instant case, a *State's witness* was on the stand. He had been asked whether he had ever arrested or stopped *the defendant* previously; he had. On redirect examination, he was asked about the pertinent charges and ultimate disposition in those instances. Meeker objected, *contending the matter was "irrelevant."* As was the case in *King*, "defendant-appellant

stated no reasons or grounds for his respective objections." [1]

We believe the rule set forth in *King* (which we erroneously applied in *Fletcher*) may be properly applied in this case. *Misenheimer v. State*, (1978) Ind., 374 N.E.2d 523; *Potter v. State*, (1979) Ind.App., 385 N.E.2d 955; *Johnson v. State*, (1978) Ind. App., 380 N.E.2d 566.

There is, however, an additional ground for affirmance.

Meeker first asserts that, in a criminal proceeding, evidence of separate and distinct crimes is inadmissible to prove that a defendant is guilty of the offense charged. With that assertion we have no quarrel. *Hall v. State*, (1976) 264 Ind. 132, 340 N.E.2d 771; *Dexter, supra; Woods v. State*, (1968) 250 Ind. 132, 235 N.E.2d 479.

Meeker recognizes the limited exceptions that such evidence is admissible if relevant to prove intent, motive, identification, or common scheme or plan, *Jenkins v. State*, (1975) 263 Ind. 589, 335 N.E.2d 215, and that, once a defendant takes the stand, he "opens the door"—placing his credibility in issue—and the State may inquire into such matters, *Ashton v. Anderson*, (1972) 258 Ind. 51, 279 N.E. 210.[2] Meeker asserts that most of the charges and the conviction lacked relevancy to prove intent, motive, etc. Thus, Meeker concludes, the trial court must have admitted the evidence on the ground that, by his "previous arrest" questions during cross-examination, Meeker had "opened the door."

Meeker contends that he did not "open the door" to allow testimony concerning his ultimate conviction. In his brief, he explains:

"Rather Meeker was merely eliciting testimony to establish that Perrelle was biased and prejudiced against him which is a permissible impeachment technique.

*Lindley v. State*, (1978) Ind., 373 N.E.2d 886; and, *Hunter v. State*, (1977) Ind. App., 360 N.E.2d 588."

We are hesitant to apply the "opening the door" principle to cases where the defendant, by posing certain questions to *adverse* witnesses, affords opposing counsel the opportunity to carry the issue one step further—possibly over the threshold. Instead we will consider the issue in terms of what Meeker presents as his best argument.

There are many ways to impeach a witness. An adverse party may introduce evidence to prove bad character, inconsistent statements, incompetency, prejudice or bias, and so on. In most cases, however, the witness may be rehabilitated on redirect exam. If the attack focused on the bad moral character of the witness, it may be countered by evidence of the contrary. *Ashton v. Anderson, supra*. Allegations or prior inconsistent statements may be countered by evidence—intrinsic or extrinsic—of the contrary. *Johnson v. State*, (1978) Ind., 373 N.E.2d 169; *Beard v. Dodd*, (1973) 156 Ind.App. 322, 296 N.E.2d 442; *Millington v. State*, (1972) 154 Ind.App. 42, 289 N.E.2d 161; *Bartoszek v. Marshall*, (1970) 148 Ind. App. 214, 264 N.E.2d 635.

▬ In the instant case, Meeker cross-examined Officer Perrelle about their previous encounters in an attempt to show that the officer was biased or prejudiced against him. This is permissible impeachment technique. *Clark v. State*, (1976) 264 Ind. 587, 348 N.E.2d 27 aff'd, (1978) 378 N.E.2d 850, *cert. denied*, (1978) 439 U.S. 1050, 99 S.Ct. 731, 58 L.Ed.2d 711. However, it was just as permissible for the state to rehabilitate the witness by introducing evidence that rebutted the implication that Officer Perrelle was biased against Meeker. *Moses v. State*, (1978) Ind., 382 N.E.2d 934; *Stinson v. State*, (1974) 262 Ind. 189, 313 N.E.2d 699.

---

1. "Incompetent, immaterial, and irrelevant," are disfavored catch-words. Without more, they preserve nothing for appeal. *Wilson v. State*, (1966) 247 Ind. 454, 217 N.E.2d 147; *Brown v. State*, (1939) 216 Ind. 106, 23 N.E.2d 267; *Williams v. State*, (1907) 168 Ind. 87, 79 N.E. 1079.

2. A defendant may "open the door" to impeachment of his own witnesses by questioning in regard to such matters on direct examination. *Baker v. State*, (1978) Ind., 372 N.E.2d 1174; *Gilliam v. State*, (1978) Ind., 383 N.E.2d 297.

In this case, rehabilitation required a "justification" for the arrests and stops. The admissibility of further evidence concerning the final disposition of the charges was a matter within the sound discretion of the trial judge.

We find no abuse of discretion.

*Issue Two*

Meeker complains that the trial court failed to conduct a hearing to determine the issue of indigency in regard to his ability to pay court costs and fines.

IC 1971, 35-1-44-8 provides:

"(a) *Whenever the court imposes a fine, costs, or both, it shall conduct a hearing to determine whether the convicted person is indigent.* If he is not indigent, the court shall direct:

(1) [T]hat the person pay the entire amount at the time sentence is pronounced;

(2) [T]hat the person pay the entire amount at some later date; or

(3) [T]hat the person pay specified parts at designated intervals.

(b) Upon any default in the payment of a fine, costs, both, or any installment thereof, then either:

(1) Execution may be levied and such other measures may be taken for the collection of the entire amount or the unpaid balance as are authorized for the collection of an unpaid civil judgment entered against the person in an action on a debt brought by the county attorney; or

(2) The court may direct that the person, if he is not indigent, be committed to the county jail and credited toward payment at the rate of five dollars ($5.00) for each twenty-four (24) hour period he is confined, until the amount paid plus the amount credited equals the entire amount due. . . ." (Our emphasis)

Meeker's case was tried to the court. The judge heard and considered the evidence, and issued his judgment all in one sitting. He found Meeker guilty on 3 counts, proceeded forthwith to impose fines and concurrent prison terms, and then set a time for reviewing the sentence.[3] He stated that he would consider "any mitigating circumstances" Meeker or his family would care to bring forward.

At the hearing, the judge stated, "Anything you wish to show, counselor, I will be glad to listen to it, consider it." The defense counsel replied that, pursuant to "Section 35-8-1-87", he would "call on Mrs. Meeker to the stand and I'm specifically referring to mitigating criteria set forth and that is the imprisonment results in undue hardship of the defendant and/or his dependents."[4]

Meeker and his wife testified that *imprisonment* would work undue personal and financial hardship on him and his wife, child, parents, and in-laws. But throughout the hearing, not one word was spoken by Meeker, his wife, either counsel, or the judge about the fines and costs, or Meeker's ability to pay them. The sole issue was

---

**3.** The judge stated he was having this hearing as if this was a felony case (pursuant to IC 1971, 35-50-1A-3 (Burns Code Ed., Repl. 1979)).

**4.** We assume counsel was intending to invoke IC 1971, 35-50-1A-7 (Burns Code Ed., Repl. 1979). The statute provides:

"(a) In determining what sentence to impose for a crime, the court shall consider the risk that the person will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record, character, and condition of the person.

(b) *The court may consider these factors as mitigating circumstances or as favoring*

*suspending the sentence and imposing probation:*

\* \* \* \* \* \*

(10) *Imprisonment of the person will result in undue hardship to himself or his dependents.*

(c) The court may consider these factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment:

\* \* \* \* \* \*

(d) The criteria listed in subsections (b) and (c) of this section do not limit the matters that the court may consider in determining the sentence. . . ." (Our emphasis)

whether the prison terms should be modified in any way.

In making his ruling, the judge stated, ". . . the burden's always on the defendant to get the court to reduce the sentence and I tell you the way it looks to me I don't think there is anything here that would indicate it. . . ."

The only modification of sentence proffered by the judge was as follows:

". . . if Mr. Meeker would prefer to serve the balance of his time at the penal farm, I'll authorize that. Of course, the most he would have to serve unless he fouled up badly, would be six months. With two days credit for one. So I see no uh—I see absolutely nothing in the evidence which would justify reduction in the penalty heretofore imposed."

The sentence was not modified in any way as a result of the hearing.

In his belated motion to correct errors, Meeker asserts that IC 35-1-44-8(a) requires the court to conduct a hearing to determine whether a convicted person is indigent *prior to* the imposition of fines. Meeker asserts that the trial court did not inquire—the implication being that it was the duty of the court to do so—whether Meeker had the funds or property available to pay the fines and costs, or would be able to pay at any time in the future.

**5.** In his belated motion to correct errors, Meeker asserts that the finding of indigency for the purpose of appointing defense counsel will be conclusive in the later determination. We disagree.

To find an individual "indigent" in regard to a particular statute, is to find that individual in need of the benefit, consideration, or dispensation thereby conferred. That is, the *status* of indigency is closely related to the *purpose* of the statute. We are unable to say that a finding of indigency in regard to the appointment of trial counsel—a constitutional right—is the same as a finding that the individual is indigent in regard to his ability to pay court costs and fines—a legitimate state interest. The determinations are related, but independent, ones and are left to the discretion of the trial court.

**6.** The indigency issue cannot be waived. IC 1971, 35-50-5A-1 (Burns Code Ed., Repl.1979) provides:

The State agrees that the court was required to make a prejudgment indigency determination before it imposed the fines against Meeker, but argues that the error is harmless, or that a waiver occurred, since the court held a post-judgment hearing to review the sentence and the appellant failed to raise the indigency issue at that time.

■ Trial courts have always been afforded leeway in holding, at various points in the criminal process, special and mandatory hearings, reviews, and the like. We will not prescribe an "order of events" they must follow. We will require that a defendant's procedural and substantive rights are properly afforded at a meaningful time.

■ Thus, we find no fault with the trial court convicting, rendering its judgment, and sentencing Meeker without a separate or "prior" indigency hearing. IC 1971, 35-50-1A-2 (Burns Code Ed., Repl. 1979), IC 35-1-44-8. We find no fault with the court reviewing the mitigating and aggravating circumstances at the hearing to modify. IC 1971, 35-50-1A-7 (Burns Code Ed., Repl.1979). However, we do find fault with the fact that, fines and costs having been imposed, the court never, at any time, inquired and determined whether Meeker was indigent in regard to IC 35-1-44-8.[5] This is an affirmative duty placed upon the court by statute.[6]

"(a) When a convicted person is sentenced to imprisonment, the court shall, without delay, certify, under the seal of the court, copies of the judgment of conviction and sentence to the sheriff and to the department of correction.

(b) The judgment must include:

* * * * * *

(3) The amount of the fines or costs assessed, if any, whether or not the convicted person is indigent, and the method by which the fines or costs are to be satisfied;

* * *"

We are unable to determine how—if the determination of indigency was waived—a court could comply with this statute. (IC 35-1-44-8 and 35-50-5A-1 were amended by Acts 1977, P.L. 340 §§ 138 and 141, respectively.) A helpful discussion of the relationship among the statutes dealing with the imposition of costs and fines can be found in West's AIC 35-1-44-8.

We remand, with instructions to the trial court to hold a hearing pursuant to IC 35–1–44–8, and to make all necessary determinations with regard to this matter.

Upon compliance with this order, the judgment is in all things affirmed and approved.

ROBERTSON, J., and BUCHANAN, C. J. (Participating by designation), concur.