**Louis C. JONES, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 283 S 58.**

Supreme Court of Indiana.

Sept. 11, 1984.

John C. Haury, Susan H. Schwandt, Robbins & Haury, Bedford, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Robbery, a class C felony, Ind.Code § 35–42–5–1 (Burns 1979), Conversion, a class A misdemeanor, Ind.Code § 35–43–4–3 (Burns 1979), and Conspiracy to Commit Armed Robbery, a class B felony, Ind.Code §§ 35–41–5–2 and 35–42–5–1 (Burns 1979). He was sentenced to eight (8) years imprisonment on the robbery count, one (1) year upon the conversion count, and twenty (20) years upon the conspiracy count, said sentences to be served concurrently. This direct appeal raises five (5) issues for our review, one of which compels us to reverse the judgment of the trial court and to order a new trial.

The record disclosed that on the morning of January 28, 1982, Ray Pierce, the manager of a Swifty Service Station near Bedford, Indiana, was robbed of approximately $170.00 by an armed man wearing a stocking mask over his head. After a lengthy police investigation, during which a vehicle thought to have been used in the robbery was found abandoned and discovered to have been stolen, police determined that Brad Bartlett, Mark Pridemore, and the Defendant had committed the robbery. Bartlett and Pridemore were arrested and gave statements implicating the Defendant. Defendant's girlfriend also gave a statement implicating the Defendant, and all three testified for the State at Defendant's trial and gave evidence of his guilt.

One of the defense witnesses, Paul Trowbridge, testified that he had been confined at the Lawrence County Jail in March, 1982, when Brad Bartlett was placed there and that Bartlett had told him that he (Bartlett) and Mark Pridemore had committed the robbery and were the only two who knew of it. He further testified that Bartlett had told him that the prosecutor's office wanted the Defendant badly, that the prosecutor had said that they would do anything to get him, that if Brad would give a statement against the Defendant, he would go easy on him with the robbery, but that, if not, they would charge and prosecute him on all the other crimes. Two previous defense witnesses had testified to the same statements, in essence, having been made by Bartlett, while all were incarcerated in the Lawrence County Jail.

During the State's cross-examination of Paul Trowbridge, the Defendant objected to the Prosecutor's questioning of Trowbridge regarding his prior convictions for failure to pay child support and for escape. Defense counsel argued that such questioning was not permissible impeachment interrogation, in light of the rule set forth in *Ashton v. Anderson*, (1972) 258 Ind. 51, 279 N.E.2d 210. The trial court, however, overruled the objection, and Defendant assigns that ruling as error.

■ We agree with the Defendant that under *Ashton*, impeachment by the disclosure of prior convictions for failure to pay child support and escape is impermissible. In *Ashton*, this Court held that only convictions for treason, murder, rape, arson, burglary, robbery, kidnapping, forgery, wilful and corrupt perjury, and crimes involving dishonesty or false statement are admissible for impeachment purposes; hence, the trial court committed reversible error when it overruled Defendant's timely objections.

■ The State concedes that the witness' prior crimes are not included within the scope of *Ashton*, but argues that those

prior convictions may be revealed to show bias on the part of the witness, citing *Clark v. State*, (1976) 264 Ind. 524, 348 N.E.2d 27, *cert. denied*, 439 U.S. 1050, 99 S.Ct. 731, 58 L.Ed.2d 711. It argues that, inasmuch as Trowbridge had been confined at the Lawrence County Jail and had been previously convicted of crimes in Lawrence County, it was conceivable that he "harbored a hostility towards the Lawrence County Prosecutor's office and Lawrence County authorities." (Brief of Appellee, p. 12). It is, of course, "conceivable" that every person who has been arrested, incarcerated, and/or convicted of any offense maintains feelings of hostility; however, such is not enough to permit circumvention of the clear holding of *Ashton*. Otherwise *Ashton* would lose all viability.

In *Clark*, Justice DeBruler wrote:

"The relevance of a conviction to bias against the State remains an arguable point. On the one hand, it is easy to imagine that a prior conviction might produce an extreme and undifferentiated hostility against the State, causing a witness to exaggerate or slant his testimony against the State. On the other, it is equally easy to conceive of a prior conviction which is so remote as to arouse no such animus at all. For example, if the challenged witness pled guilty to a minor offense and was minimally punished, in all likelihood, the witness' conviction would not produce a sense of hostility against the State sufficient to color his testimony. However, *in order to legitimate a subject matter for cross-examination for bias, the questioning party does not have to show that such matter will necessarily prove the witness' bias and prejudice, but only that there exists a reasonable degree of probability that the witness is biased or prejudiced because of this evidence.*"

*Id.* at 533–534, 348 N.E.2d at 33–34. (emphasis added).

The facts in *Clark* are markedly different from those in the case at bar. In *Clark*, the Court determined that the trial court had not erred in allowing the prosecu-

tor to cross-examine a defense witness concerning the recent conviction of *her father* for possession of an unlicensed pistol, such cross-examination being for the purpose of determining whether or not she bore any hostility against the State as a result of that conviction. This Court noted that the fact situation did not come within the purview of *Ashton*, the conviction not having been of the witness, and allowed the evidence to be introduced inasmuch as there was "a reasonable degree of probability" that bias did exist. It is doubtful that the rule from *Clark* could be utilized to permit the disclosure of a witness' own conviction, inasmuch as the potential for improper prejudice therefrom would outweigh its limited relevance.

In a case which is factually similar to the one at bar, *Gaston v. State*, (1983) Ind. App., 451 N.E.2d 360, the State questioned a defendant's alibi witness about a prior arrest for possession of marijuana by Officer Knowles. The State argued that the arrest showed the witness' bias and was admissible in that bias and prejudice are always relevant. The court observed:

"The court erred in admitting testimony of Cruse's arrest because it was irrelevant in establishing his bias against the State. The State failed to show the existence of a reasonable degree of probability that Cruse was embittered against the State or Knowles as a result of his arrest and was therefore motivated to fabricate exculpatory testimony. *See Clark v. State*, (1976) 264 Ind. 524, 348 N.E.2d 27, *cert. denied*, 439 U.S. 1050, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978); *cf. Meeker v. State*, (1979) Ind.App., 395 N.E.2d 301. Because there is no nexus connecting the fact of the arrest and the conclusion of bias, the testimony only served improperly to impeach Cruse and tended to prejudice the jury against Gaston. Any evidence of Cruse's arrest is therefore inadmissible."

*Id.* at 365.

In the case at bar, the State made no effort to show that there was a "reasonable degree of probability" that the witness

was biased or prejudiced against the State because of his prior convictions. On cross-examination, the Prosecutor merely asked the witness if he had prior convictions for failure to pay child support and escape. No questions, whatever, were asked to determine whether the witness was antagonistic toward the State and the Prosecutor as a consequence of his prior encounters.

In addition, the State argues that the Defendant opened the door to the use of the witness' prior convictions for impeachment purposes, when, during direct examination of the witness, defense counsel asked: "Mr. Trowbridge, were you confined at the Lawrence County Jail when Brad Bartlett was placed there in March of 1982?" We do not agree that such a general question opens the door to impeachment by the revelation of prior convictions.

Neither are we able to find harmless error in this case. Although two other defense witnesses had given the same testimony, in essence, as that which was given by Trowbridge, both of those witnesses were properly impeached by disclosure of their felony convictions encompassed by the *Ashton* rule; hence, Trowbridge's character and veracity were critical as the only unimpeached evidence of the Prosecutor's alleged bias and plot against Defendant.

In light of our disposition of this issue, we do not address other issues raised by the Defendant.

Defendant's conviction is reversed, and the cause is remanded for a new trial.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.