**Dempsey MARSHALL,**
**Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 83A01–8610–CR–287.

Court of Appeals of Indiana,
First District.

April 6, 1987.

Bruce V. Stengel, Clinton, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Dempsey Marshall (Marshall), was convicted by a Vermillion Circuit Court jury of the offense of receiving a stolen refrigeration semi-trailer, under IND.CODE 35–43–4–2(b), a Class D felony. From an enhanced penalty of four years and a $5,000.00 fine, he appeals.

We affirm.

## STATEMENT OF THE FACTS

Sometime between November 15, 1985, and December 15, 1985, a 1984 semi-trailer, upon which a Thermo King refrigeration unit was mounted, belonging to Cook Trucking Company (Cook) of North Carolina, and bearing a North Carolina title and registration, disappeared from a lot near Chillicothe, Ohio. It was found on January 15, 1986, at the Kenley Company (Kenley) in Clinton, Vermillion County, Indiana, and identified by the vehicle identification number. Cook had purchased it in May 1984, for $37,500.00 and it had a value on January 15, 1986, of at least $30,000.00. Marshall was in possession of the semi-trailer and was using it to haul goods for Kenley. Neither Marshall nor Mike Bolin, hereafter discussed, ever had authority to exercise control over the vehicle, and both were unknown to Cook. When it disappeared, the semi-trailer bore North Carolina license plates, the Cook name on a 5′ × 18″ sign riveted to the rear doors, and a decal, displaying "T117", on the corners. Additionally, the refrigeration unit possessed a separate serial number. When the semi-trailer was found, the Cook sign, the decal, and the refrigeration unit had been removed, and it was being operated with plates registered to a 1972 semi-trailer belonging to a Fred Drake of Terre Haute. The semi-trailer was discovered in Marshall's possession when he attempted to sell the refrigeration unit, separately, to Thermo King on January 14, 1986, for $1,800.00, though the unit was valued at that time in excess of $12,000.00. Marshall admitted to prying the serial number from

the refrigeration unit. He also misrepresented the number to Thermo King. The above facts are not controverted.

Marshall attempted to explain his possession of the semi-trailer. He had met one Mike Bolin, a perfect stranger, at a truck stop in the vicinity of Columbus, Ohio, near Thanksgiving of 1985, where Bolin approached him and offered to sell him the semi-trailer. They dickered and Marshall gave Bolin his address. No deal was concluded at that time, but the next day, November 27, 1985, Bolin appeared with the semi-trailer at Clinton, Vermillion County, Indiana, and after some negotiations, Marshall purchased the semi-trailer from Bolin for $11,000.00, as follows: $4,500.00 cash, which he just happened to have in the house from earnings and the sale of equipment (he does not trust banks); two checks totaling $500.00; and a semi-trailer that Marshall owned, valued by him at $3,000.00. Marshall would owe the balance of $3,000.00, payable either in 90 days without interest, or $250.00 per month with interest of 10%. A bill of sale was drawn up and typed on Marshall's typewriter by his girlfriend. Bolin had no title or registration, and he told Marshall he owed $8,000.00 or $9,000.00 on it. While admitting he attempted to sell the refrigeration unit for $1,800.00, removed the identification number from it, operated on false plates, and lacked a title or registration, Marshall denied removing the Cook signs and the decal, and possessing any knowledge that the semi-trailer had been stolen. Though he claimed to have Bolin's address, Marshall was never able to find him. Marshall testified that the irregular dealing in rolling stock was common in the industry. The semi-trailer given by Marshall in partial exchange was acquired, according to Marshall, from a stranger named Rusty from Lebanon. Rusty had given Marshall a blank title, signed and notarized, which Marshall had passed on to Bolin without ever having it registered in his own name.

The State impeached Marshall with evidence of two felony convictions of theft, one which involved a motor vehicle.

## ISSUES

Marshall has assigned five errors for review which we restate into three issues, as follows:

I. The prosecuting attorney committed misconduct in final argument.

II. The evidence was not sufficient to support the conviction.

III. The trial court erred in imposing a fine without making a determination of Marshall's indigency.

## DISCUSSION AND DECISION

### ISSUE I: *Prosecutorial Misconduct*

Final argument was not recorded and thus does not appear in the record. Marshall alleged in his motion to correct error, which was filed on July 30, 1986, that during final argument the deputy prosecutor made the following statements: (1) in reference to the testimony of Marshall that switching registration plates was a common practice in the industry, he stated, "I just don't believe truckers carry on or behave in that way"; (2) in reference to the impeachment of Marshall by proof of two previous felony convictions, he requested that the jury convict Marshall "because he is a thief and a liar." The motion to correct error was not verified, nor was it supported by affidavits. The motion was denied on August 6, 1986. Thereafter, the praecipe was filed on August 18, the transcript of the evidence was certified by the reporter on October 17, certified by the clerk on October 20, and finally, certified by the judge on October 20. Only then, on October 22, 1986, did Marshall attempt to support the motion to correct error by affidavit, presumably pursuant to Ind.Rules of Procedure, Appellate Rule 7.2(a)(3)(c). The affidavit also stated that defense counsel had promptly objected to the deputy prosecutor's personal comments and moved that the trial court admonish the jury, or in the alternative, grant a mistrial, but the trial court did neither and merely said, "Let's proceed."

Ind.Rules of Procedure, Trial Rule 59(H) provides that when error is predicated upon evidence outside the record

the motion to correct error shall be supported by affidavits, after which the opposing party may file counter-affidavits. The allegation here, misconduct of the prevailing party, is under T.R. 59(A)(1). An affidavit is required in such instances. 4 W. HARVEY, INDIANA PRACTICE sec. 59.-5, at 131 (1971). Generally, any question regarding misconduct of counsel is waived by failure to include the final argument in the record. *Stephens v. State* (1973), 260 Ind. 326, 295 N.E.2d 622; *Yuhasz v. Mohr* (1974), 159 Ind.App. 478, 307 N.E.2d 516; *Adkins v. Elvard* (1973), 155 Ind.App. 672, 294 N.E.2d 160, *trans. denied.* The clear purpose of T.R. 59(H) is to provide an alternative method to bring omitted matters into the record, but it also provides a method by which opposing parties can resist it by counter-affidavits. Marshall's ex parte affidavit, filed long after the ruling on the motion to correct error, prevented the opposing party from resisting it and prevented the judge from ruling on the merits. Thus Marshall, by his failure to follow T.R. 59(H), has preserved nothing to review.

■ Even if the question had been preserved, we are unpersuaded that reversible error exists. The granting or the denial of a mistrial is left to the sound discretion of the trial court and will be disturbed only for a manifest abuse of that discretion. *Fultz v. State* (1985), Ind.App., 473 N.E.2d 624; *Didio v. State* (1984), Ind.App., 471 N.E.2d 1117. Granting a mistrial is an extreme sanction and is warranted only when no other action can be expected to remedy the situation. *Didio, supra.*

■ Here, the alleged error is predicated upon the remarks of the deputy prosecutor at trial that had the implication that he believed Marshall was guilty and was a liar. The remarks were to the effect that the deputy prosecutor did not believe that truckers acted that way, and he did not believe Marshall's story about his possession of the semi-trailer. Before reversible error exists, the misconduct must place a defendant in grave peril. Grave peril is determined by the probable, persuasive effect of the misconduct on the jury's decision. *Riley v. State* (1981), Ind., 427

N.E.2d 1074. The effect of those remarks on the jury is extremely questionable. By the nature of the proceedings, the jury was exposed to the fact that the deputy prosecutor had investigated the case, approved the Information, brought Marshall to trial, presented evidence against him, and severely challenged Marshall's story on cross-examination, to the point of impeaching his credibility with proof of prior felonies. Only an incredibly naive juror would not, from those events, conclude that the deputy indeed believed Marshall guilty and believed him to be a liar. While we do not condone the deputy's statements, they added nothing. We find no error.

ISSUE II: *Sufficiency of the Evidence*

■ Marshall claims there is insufficient evidence to support his conviction of receiving stolen property. His total emphasis is upon his lack of knowledge that the property was stolen. We do not reweigh the evidence nor adjudge the credibility of the witnesses, but we will look only to the evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value from which the trier may infer guilt beyond a reasonable doubt, the conviction will not be disturbed. *Earls v. State* (1986), Ind., 489 N.E.2d 516.

IND.CODE 35–43–4–2(b) provides:
"A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft, commits receiving stolen property, a Class D felony...."

The State must prove that Marshall knew that the property was stolen, but circumstantial evidence will support the conviction. *Johnson v. State* (1982), Ind.App., 441 N.E.2d 1015. However, while knowledge of the stolen character of the property can not be inferred solely from the unexplained possession of it, it can be inferred from all of the circumstances surrounding the defendant's possession and use of the property in question. *Johnson, supra.*

In *Clark v. State* (1978), 177 Ind.App. 376, 379 N.E.2d 987, *trans. denied,* the

court found that trading contraband for stolen property, and a large disparity in the values of the stolen property and the contraband was sufficient to sustain the conviction.

■ Here, Marshall had operated the trailer with false license plates, had attempted to sell the refrigerator unit separately for a fraction of its value, had no title or registration, and had purchased the semi-trailer for a price far below its value. The jury was entitled to infer from the clandestine and irregular manner that Marshall stated that he came into possession of the semi-trailer that such a story was fabricated to conceal his guilt, and was evidence of guilty knowledge. We find no error.

## ISSUE III. *Fine*

The trial court imposed an enhanced sentence of four years and levied a fine of $5,000.00. Marshall claims that the fine was error because the trial court conducted no indigency hearing. IND.CODE 35–38–1–18 provides:

"(a) Whenever the court imposes a fine or costs, it shall conduct a hearing to determine whether the convicted person is indigent. If he is not indigent, the court shall order:

(1) That the person pay the entire amount at the time sentence is pronounced;

(2) That the person pay the entire amount at some later date;

(3) That the person pay specified parts at designated intervals; or

(4) At the request of the person, commitment of the person to the county jail for a period of time set by the court in lieu of a fine. If the court orders a person committed to jail under this subdivision, the person's total confinement for the crime that resulted in the conviction must not exceed the maximum term of imprisonment prescribed for the crime under IC 35–50–2.

(b) Upon any default in the payment of the fine or costs:

(1) The county attorney may bring an action on a debt for the unpaid amount; or

(2) The court may direct that the person, if he is not indigent, be committed to the county jail and credited toward payment at the rate of twenty dollars ($20) for each twenty-four (24) hour period he is confined, until the amount paid plus the amount credited equals the entire amount due."

The record shows that at the sentencing hearing the trial court imposed the fine without first determining indigency. After the trial court advised Marshall of his right to an appeal, it conducted a hearing to determine if Marshall had assets with which to employ appellate counsel. Marshall answered that he had no money, no real estate, no bank account, and no other property of any value, only a job. Thereupon, the trial court appointed appellate counsel.

■ A finding of indigency for the purpose of appointing defense counsel is not conclusive in regard to a defendant's ability to pay a fine. *Meeker v. State* (1979), 182 Ind.App. 292, 395 N.E.2d 301. The order of sentencing and conducting the indigency hearing is not critical or reversible so long as an indigency hearing, which is mandatory, is conducted. *Id.* Incarceration is prohibited where an indigent defendant cannot pay his fine. *Borum v. State* (1982), Ind.App., 434 N.E.2d 581. The purpose of the rule is to ensure that the indigent defendant would not be imprisoned for failure to pay the fine.

■ Clearly, Marshall was indigent. The statute states that "[i]f he is *not indigent,* the court shall order:...." Subsections (a)(1) through (b)(2) of the section state the compulsions by which the fine can be enforced. We assume, by reverse inference, that if the defendant is indigent, no fine shall be enforced. However, the statute does not state that the trial court cannot impose a fine. We are of the opinion that the fine, at this point, cannot be enforced against Marshall, but since no effort to enforce it is being made and he is not

being coerced in any manner provided in the statute, he has no appealable issue.

For the above reasons, this cause is affirmed.

Judgment affirmed.

ROBERTSON and HOFFMAN, JJ., concur.