**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| B.J., | ) | |
| | ) | |
| Appellant/Respondent, | ) | |
| | ) | |
| vs. | ) | No. 28A01-1403-JV-113 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee/Petitioner. | ) | |

APPEAL FROM THE GREENE CIRCUIT COURT
The Honorable Erik C. Allen, Judge
Cause No. 28C01-1402-JD-4

**September 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

In December of 2013, Gerry England's gray Chevrolet 2006 HHR LS ("the HHR") was stolen from the parking lot of the funeral home where he worked. On December 23, 2013, Appellant/Respondent B.J. told C.H., an acquaintance, and C.H.'s mother that he had received a car from his parents for Christmas. On December 26, 2013, Shandra Jackson saw B.J. driving the HHR, which she recognized as England's and knew to be stolen. Appellee/Petitioner the State of Indiana ("the State") alleged that B.J. committed what would be Class D felony receiving stolen property, if committed by an adult. After a hearing, the juvenile court adjudged B.J. to be a juvenile delinquent and awarded wardship of him to the Department of Correction ("DOC"). B.J. contends that the State failed to produce evidence sufficient to sustain the juvenile court's adjudication. We affirm.

**FACTS AND PROCEDURAL HISTORY**

At some point in December of 2013, England was working at a Bloomfield funeral home and was lining cars up for a funeral procession when his HHR was stolen from the parking lot of the funeral home. The HHR bore a front license plate that read, "Digger." On December 23, 2013, B.J. came to his acquaintance C.H.'s house in a vehicle. B.J. made a second visit to C.H.'s home on December 26, 2013, driving a grey Chevrolet and bringing B.J.'s friend "Torrie." When C.H.'s mother asked B.J. about the vehicle, B.J. told her that his father had given it to him after purchasing it "off of Craigslist." Tr. p. 26. According to C.H., B.J. said that his mother and father had bought him the vehicle for Christmas. C.H.'s mother noted that the vehicle was a gray four-door. C.H. "kept

2

asking [B.J.] like to let [him] see his license and his registration and stuff like that but he wouldn't show [him]." Tr. p. 31. B.J.'s father did not, in fact, buy B.J. a car for Christmas.

Later that day, near a Bloomington shopping mall, Jackson saw B.J. driving the HHR. Jackson knew B.J. from high school and, because she knew England's daughter, was familiar with the HHR and its "Digger" plate and knew it to be stolen. After calling police and England's daughter, Jackson drove to the mall in an attempt to locate the HHR. Although Jackson did not locate the HHR, she saw B.J. "run into the mall[,] followed him, and called police a second time. Tr. p. 21. Meanwhile, C.H. was driving the HHR because B.J. had instructed him to drive Torrie home and was stopped nearby by the Bloomington Police.

On January 2, 2014, the State filed a delinquency petition in Monroe County alleging that B.J. committed what would be Class D felony receiving stolen property if committed by an adult. On February 19, 2014, the Monroe Circuit Court adjudged B.J. to be delinquent and ordered the case transferred to Greene County for disposition. On March 5, 2014, the juvenile court held a hearing, after which it awarded B.J.'s wardship to the DOC.

**DISCUSSION AND DECISION**

**Whether the State Produced Sufficient Evidence to
Sustain B.J.'s Delinquency Adjudication**

In reviewing the sufficiency of the evidence with respect to juvenile adjudications, our standard of review is well settled. We neither reweigh the evidence nor judge the credibility of witnesses. *C.S. v. State*, 735 N.E.2d 273, 276 (Ind. Ct. App. 2000), *trans. denied* (citing *Fields v. State*,

3

679 N.E.2d 898, 900 (Ind. 1997); *Moran v. State*, 622 N.E.2d 157, 158 (Ind. 1993)). The State must prove beyond a reasonable doubt that the juvenile committed the charged offense. *Id.* We examine only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. *Id.* We will affirm if there exists substantive evidence of probative value to establish every material element of the offense. *Id.* Further, it is the function of the trier of fact to resolve conflicts in testimony and to determine the weight of the evidence and the credibility of the witnesses. *Jones v. State*, 701 N.E.2d 863, 867 (Ind. Ct. App. 1998).

*K.D. v. State*, 754 N.E.2d 36, 38-39 (Ind. Ct. App. 2001).

In order to establish that B.J. committed receiving stolen property, the State was required to prove that he "knowingly or intentionally receive[d], retain[d], or dispose[d] of the property of another person that has been the subject of theft[.]" Ind. Code § 35-43-4-2(b) (2013).

In addition to proving the explicit elements of the crime, the State must also prove beyond a reasonable doubt that the person knew that the property was stolen. *Gibson v. State*, 643 N.E.2d 885, 887 (Ind. 1994); Ind. Code § 35-41-2-2(d) ("Unless the statute defining the offense provides otherwise, if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct."). And knowledge that property is stolen may be inferred from the circumstances surrounding the possession. *Stone v. State*, 555 N.E.2d 475, 477 (Ind. 1990); *Marshall v. State*, 505 N.E.2d 853, 856 (Ind. Ct. App. 1987). However it has long been the accepted law in this state that the "surrounding circumstances" must include something more than the mere unexplained possession of recently stolen property. Instead the "mere possession" rule has been reserved for the charge of the theft. As this Court observed almost a century ago, "[t]he rule that the possession of stolen property, the proceeds of a larceny, soon after the commission of the offense, unless explained, is prima facie evidence of the guilt of the person in whose possession the property is found, does not apply to the offense of receiving stolen property." *Bowers v. State*, 196 Ind. 4, 146 N.E. 818, 820 (1925); *see also Wertheimer v. State*, 201 Ind. 572, 169 N.E. 40. 201 Ind. 572, 169 N.E. 40, 44 n.1 (1929) ("Where, as in the case at bar, there is no evidence to show that the theft was committed by some person other than the defendant charged with receiving the goods, such possession of goods

4

recently stolen raises a presumption of theft, rather than of receiving stolen goods, and is not prima facie evidence that the possessor is guilty of receiving stolen goods.").

*Fortson v. State*, 919 N.E.2d 1136, 1139 (Ind. 2010).

B.J. does not dispute that falsely telling others that the stolen car you are driving was a Christmas gift is a "surrounding circumstance" from which your knowledge that it is stolen may be inferred. B.J. seems to argue, however, that the record establishes that he told C.H. and C.H.'s mother on December 23rd that his car was a gift but that the record does *not* establish that that was the same car he drove on December 26th. This argument must fail, because the record clearly indicates that C.H. and his mother queried B.J. about the car he was driving on December 26th, which he does not dispute was the HHR. The following exchange occurred during C.H.'s mother's testimony:

| [Prosecutor]: | … You stated he came back at some point. Did you at some point and [C.H.] talk to [B.J.] about the origin of this vehicle? |
|---|---|
| [C.H.'s mother]: | Yes I did. |
| [Prosecutor]: | What happened? What did he say? |
| [C.H.'s mother]: | He told me that his dad gave it to him. They bought it off of Craigslist. |
| [Prosecutor]: | Okay. Any who was present for this conversation? |
| [C.H.'s mother]: | [B.J.], me and my son [C.H.]. |

Tr. p. 26.

C.H.'s testimony also clearly establishes that the car B.J. told him was a gift was the very same car that he was pulled over driving:

| [Prosecutor]: | And did [B.J.] come meet you? |
|---|---|
| [C.H.]: | Yeah. |
| [Prosecutor]: | How did [B.J.] come meet you? |
| [C.H.]: | He came in a car. |
| [Prosecutor]: | And what kind of car was that? |

5

| | |
|---|---|
| [C.H.]: | Chevy, I don't know what kind, but he was with a friend. |
| [Prosecutor]: | Did you ever ask him about the car? |
| [C.H.]: | Yeah I asked him and he said his mom gave it to him for Christmas … and they bought it on Craigslist for fifteen thousand dollars. |
| …. | |
| [Prosecutor]: | Was this the same car that you were later stopped in by the police? |
| [C.H.]: | Yes, sir. |

Tr. pp. 30-31.  The record is more than sufficient to establish that the car B.J. told others was a gift was, in fact, England's stolen HHR.  B.J.'s argument is nothing more than an invitation to reweigh the evidence, which we will not do.  *See K.D.*, 754 N.E.2d at 39.

The judgment of the juvenile court is affirmed.

BARNES, J., and BROWN, J., concur.