Milton PHILLIPS, Appellant-Defendant,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 2–478A119.

Court of Appeals of Indiana,
Fourth District.

March 12, 1979.

Thomas E. Kuntz, Indianapolis, for appellant-defendant.

Theo. L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CHIPMAN, Presiding Judge.

Milton Phillips appeals his conviction from a trial to the court for possession of less than ten grams of heroin and raises the following issues:

(1) Did the trial court err in denying Phillips' motion for continuance?

(2) Did the State establish a proper chain of custody with respect to the seized heroin?

(3) Was an arresting officer's testimony regarding the use of quinine to "cut" heroin impermissible hearsay?

(4) Was there sufficient evidence to establish Phillips' possession of heroin?

We affirm.

---

CONTINUANCE

Phillips was charged with possession of heroin on August 31, 1977. Six weeks later on October 14, 1977, defense counsel entered his appearance.[1] A pretrial conference was subsequently conducted on November 9, 1977, after which Phillips informed defense counsel that certain tenants where he resided might testify that Phillips did not control the use of the closet from which the heroin was seized. On the morning of trial five days later, defense counsel moved for a continuance as he had not yet had the opportunity to interview those tenants.[2] Phillips now contends the trial court abused its discretion in denying that motion for continuance. See Ind.Rules of Procedure, Trial Rule 53.4.

Our disposition of this issue is tempered by an awareness that the right to counsel is fundamental to the American system of justice. *Miller v. State,* (1978) Ind., 372 N.E.2d 1168, 1170. This right necessarily embodies the corollary right to effective counsel. *Id.* To be effective, counsel must be given sufficient opportunity to adequately prepare his case. *Lloyd v. State,* (1960) 241 Ind. 192, 170 N.E.2d 904 (two and one-half hours is not sufficient time to consult, investigate and prepare for trial); *Bradley v. State,* (1949) 227 Ind. 131, 84 N.E.2d 580 (sixty-five and one-half hours is not sufficient time to prepare a defense).

We are also cognizant of the tension between the desire for efficient and expeditious administration of criminal justice and these constitutional guarantees extended an accused. In Indiana we have declined to resolve this tension by means of any inflexible rule. Our courts are thus reluctant to fix a minimum period of time which must be allowed in every case between the time of appointment or employment of counsel and the commencement of

1. An earlier appearance had been filed on behalf of Phillips by another attorney on September 9, 1977.

2. We note that at the time Phillips' attorney entered his appearance he also filed a discovery motion which the State did not answer in total

until the day of trial. Although Phillips has failed to argue that such inaction on the State's behalf constituted an additional ground in support of the requested continuance, we neither sanction nor condone such conduct by the State.

trial. *Lloyd,* 170 N.E.2d at 907. The adequacy of time allowed for preparation must be determined on a case by case basis, considering the totality of the circumstances, including the complexity of the issues, the necessity for pretrial motions, the necessity to interview witnesses, and whether the defendant is available to assist in the preparation of his defense. *Jones v. State,* (1978) Ind.App., 371 N.E.2d 1314, 1316. We note, nevertheless, that a continuance in order to allow more time for preparation is generally not favored in criminal cases without a showing of good cause and will only be granted in the furtherance of justice. *Carlin v. State,* (1970) 254 Ind. 332, 259 N.E.2d 870, 872; *Calvert v. State,* (1968) 251 Ind. 119, 239 N.E.2d 697, 700; T.R. 53.4. Whether good cause has been shown rests within the sound discretion of the trial judge and will only be disturbed if there is a clear showing of an abuse of discretion. *Miller v. State,* (1971), 256 Ind. 296, 268 N.E.2d 299, 301; *Jay v. State,* (1965) 246 Ind. 534, 206 N.E.2d 128, 130; *Blume v. State,* (1963) 244 Ind. 121, 189 N.E.2d 568, 570. In determining whether good cause exists, the trial judge may look to the circumstances of the case as well as the allegations of the motion and is not required to grant the motion simply because it complied with T.R. 53.4. *Hooks v. State,* (1977) Ind., 366 N.E.2d 645, 647.

■ We find the facts in the case at bar to be substantially similar to those in *Miller v. State,* (1978) Ind., 372 N.E.2d 1168, where four days before trial defendant-Miller suggested to his attorney that he had an alibi. Our Supreme Court in *Miller* questioned the validity of the defendant's alibi in light of his extended silence since the time of arrest and held that six weeks was adequate time for Miller's attorney to prepare the case for trial and investigate any possible defenses. In the case at bar, five days before trial Phillips first suggested to defense counsel that witnesses might testify that he did not

control the use of the closet in which controlled substances were found. Similarly, Phillips' attorney had approximately four weeks to prepare the case for trial and investigate possible defenses. We find this to be a sufficient period of time for adequate preparation in order to provide Phillips with effective counsel. Therefore, we hold that Phillips has failed to establish a clear abuse of discretion by the trial judge in denying his motion for continuance.[3]

## CHAIN OF CUSTODY

Phillips contends the trial court erred in admitting an evidence bag containing heroin since the State failed to establish a sufficient chain of custody. This contention is founded on the State's failure to account for the actions of a forensic chemist who had access to the laboratory safe in which the heroin was kept from September 1 to September 7, 1977.

■ The law in Indiana on the requisite chain of custody for the introduction of exhibits appears well settled:

> *[W]here as in the case of seized or purchased narcotics, the object offered in evidence has passed out of the possession of the original receiver and into the possession of others, a chain of possession must be established to avoid any claim of substitution, tampering or mistake, and failure to submit such proof may result in the exclusion of the evidence or testimony as to its characteristics.*

*Graham v. State,* (1970) 253 Ind. 525, 255 N.E.2d 652, 656. In situations such as the case at bar where an exhibit is small and is one which has physical characteristics fungible in nature and similar in form to substances familiar to people in their daily lives, the danger of tampering, loss, substitution or mistake is greatest. *Graham,* 255 N.E.2d at 655. In order to lay the required foundation for the introduction of such evi-

---

**3.** In retrospect, Phillips' motion for continuance appears groundless in yet another respect. Phillips argues that the testimony of fellow tenants regarding control of the closet was essential since the key issue in this case was possession. Nevertheless, since the record reveals that Phillips admitted the heroin was his, the predicted testimony, even if forthcoming, would have been of minimal import.

dence, the State must show its continuous whereabouts from the time of police possession to laboratory testing. *Id.* Although the purpose of this foundation requirement is the avoidance of any claims of substitution, tampering or mistake, we are not concerned with absolute certainty but with probabilities. *Jones v. State,* (1973) 260 Ind. 463, 296 N.E.2d 407, 409. Thus, the mere possibility that evidence might have been tampered with will not make the evidence totally objectionable. *Kolb v. State,* (1972) 258 Ind. 469, 282 N.E.2d 541, 546. The State need only present evidence which strongly suggests the whereabouts of the evidence sought to be admitted. *Guthrie v. State,* (1970) 254 Ind. 356, 260 N.E.2d 579, 584. Therefore, the precise issue which we address is whether there exists a reasonable doubt as to the continuous whereabouts of the exhibit and whether it has remained in an undisturbed condition in light of another chemist's access to the safe in which that exhibit was locked.

We hold that the State has established a sufficient, if not admirable, chain of custody. The record reveals that the arresting officer discovered heroin in a closet outside Phillips' apartment. The heroin was then placed in a sealed evidence bag and deposited in the vault at the police property room. The following day, September 1, 1977, forensic chemist Robert McCurdy retrieved the sealed evidence bag from the vault and took it to the laboratory safe where it remained until September 7, 1977, when he removed the bag, broke the seal and conducted tests which established that the substance was indeed heroin. We find that there is no reasonable doubt as to the continuous whereabouts of the exhibit from the time it came into the possession of the police and that it remained in an undisturbed condition.

We also find little merit in Phillips' contention that a second forensic chemist's access to the laboratory safe constituted a fatal break in the chain of custody. We see little justification in imposing upon Indiana's taxpayers and law enforcement officials the burden of providing a laboratory safe for each and every chemist. Furthermore, the facts in the case at bar establish a much stronger chain of custody than those in *Telfare v. State,* (1975) Ind.App., 324 N.E.2d 270, where the court found an adequate chain although eight persons had access to exhibits which were kept on *unlocked* shelves. *See also Downing v. State,* (1978) Ind.App., 381 N.E.2d 554. Since the record does not support any inference of tampering by the second chemist who had access to the evidence bag, we find an adequate chain of custody.

## HEARSAY

Phillips also contends that the trial court erred in admitting testimony of Robert Blackwell, one of the arresting officers, regarding the use of quinine as a cutting agent of heroin.[4] Phillips argues that this evidence constituted impermissible hearsay in light of Officer Blackwell's admission that this information was obtained from conversations with informants and arrestees.[5] The State responds that Officer Blackwell merely testified from personal knowledge gained from experience and training and, therefore, this evidence was not hearsay.

---

4. Phillips also contends that the trial court erred in permitting Officer Blackwell to testify regarding the street value of the seized heroin. Although Phillips interposed a timely relevancy objection at trial and raised this contention in his motion to correct errors, we hold that this issue has been waived. Phillips made only a passing, one-sentence reference to this alleged error in his brief: "Officer Blackwell further testified as to the street value of the seized heroin, and stated that his estimate was based on matters he had been taught as a police officer." Such an "argument" totally lacks the specificity, reasoning, and support required under A.R. 8.3(A)(7). *See also Pfeifer v. State,* (1972) 152 Ind.App. 315, 283 N.E.2d 567.

5. Phillips presents less than a one-page argument in support of this contention. That argument comes dangerously close to lacking the specificity, reasoning, and support required under A.R. 8.3(A)(7). *See* note 4, *supra.* Were it not for our preference in deciding cases on the merits, we would have found Phillips has also waived this allegation of error.

In order to effectively treat this issue, we deal at length with the State's direct examination of Officer Blackwell. Initially, the State established Blackwell's qualifications: (1) over four years experience with the narcotics branch of the Indianapolis Police Department, (2) training in surveillance, investigation, and testing drugs by the Drug Enforcement Administration, and (3) four to five hundred drug related arrests of which approximately half involved heroin. Furthermore, Blackwell stated that he had "run across" quinine in previous heroin arrests. After the State's introduction into evidence of the quinine seized at Phillips' apartment, the record reveals the following sequence of exchanges:

Q. [State] Now, Officer, when you have made previous arrests and found persons with suspected heroin have you ever run across a substance such as State's Exhibit Nine (9)?

A. [Blackwell] Yes, I have.

Q. And have you had occasion to speak with informants and arrestees, persons who you have arrested, concerning that substance?

A. Yes.

Q. And what information do you have pertaining to that substance, as related to possession of heroin?

Mr. Barr: [defense counsel] Objection. It calls for a hearsay response.
The Court: Objection will be overruled. You may answer the question.

A. The quinine is used to cut the heroin, derivative of opium, with to make the heroin less potent and make more of it.

In light of Officer Blackwell's practical experience and formal training, we hold that he was sufficiently qualified by the State to elicit an expert opinion regarding the use of quinine in relation to heroin.[6] See Ross v. State, (1977) Ind.App., 360 N.E.2d 1015. We believe this finding disposes of Phillips' hearsay argument since the opinion of an expert witness which is based in part on hearsay customarily relied upon by such experts is properly admissible. Gooch v. Hiatt, (1975) Ind.App., 337 N.E.2d 585, 589; see also Commonwealth v. David, (1957) 335 Mass. 686, 141 N.E.2d 827; Fed. R.Evid. 701–706; McCormick, Handbook of the Law of Evidence §§ 10–18 (2nd Ed. 1972); 2 J. Wigmore, Evidence §§ 665–670 (3rd Ed. 1940); Annot., 100 A.L.R.2d 1421 (1965). As stated in Capital Improvement Board of Managers of Marion County v. Public Service Commission, (1978) Ind.App., 375 N.E.2d 616, at 626:

The opinion of an expert is not necessarily rendered inadmissible or incompetent because it may be based on knowledge of facts gained from hearsay sources. Any expert worthy of the name must of necessity assimilate prior learning derived from the experiences of others. As an expert witness he draws upon various sources of information whose credibility or trustworthiness he must determine in light of his expertness. It would completely frustrate the use of expert witnesses if they were obliged to substantiate each single factor upon which their ultimate opinion must depend upon first hand personal knowledge or personal experience. If some of the expert's factual information is derived from sources fairly trustworthy though hearsay and he has as such the ability to coordinate and evaluate that information with all the other facts in his possession secured through personal observation, the trial court may in the exercise of a sound discretion permit the expert's ultimate opinion to be considered by the jury.

We, therefore, find no abuse of discretion or error by the trial court in admitting Blackwell's opinion even though it was based in part on what informants and arrestees had said since we believe that this type of hearsay is customarily relied upon by narcotics experts. We also note that in light of recent decisions, any error, if established, would be harmless since Phillips admitted that the heroin was his. See Murry v. State, (1979) Ind.App., 385 N.E.2d 469 citing

6. We note that Phillips has not questioned the admission of this testimony on relevancy grounds.

*Burnett v. State,* (1978) Ind., 377 N.E.2d 1340.[7]

### SUFFICIENCY

And finally, Phillips contends that there was insufficient evidence to establish his possession of the heroin which was seized from the closet outside his apartment. Phillips argues that the evidence did not establish constructive possession particularly in light of evidence showing he did not have control over the use of the closet.

Phillips' argument is without merit. The record reveals that following the seizure of the heroin and post-*Miranda* warning questions by the arresting officers, Phillips admitted that the heroin was his.[8] We, therefore, find sufficient evidence to support Phillips' conviction for possession of heroin.

Finding no reversible error, we affirm.

MILLER and YOUNG, JJ., concur.

---

**7.** We do not, however, read *Murry* as holding that confessions render *all* evidentiary errors harmless. We construe the decision in *Murry* as limited solely to its facts. Similarly, our finding of harmless error would be limited to the facts of the case at bar.

**8.** Arresting Officer Blackwell's testimony established that at the time of the arrest, Phillips' girlfriend and four of her young children (the oldest being 12 years old) were also in the apartment. Blackwell then stated that Phillips denied ownership of the heroin following initial questioning but subsequently admitted that the heroin was his after Blackwell "inferred" that the children and Phillips' girlfriend could be arrested. We neither sanction nor condone such conduct on the State's behalf; nor do we understand defense counsel's unexplained failure to raise the issue of coercion.