**Donald V. THOMAS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1183S427.**

Supreme Court of Indiana.

Dec. 26, 1985.

Michael A. Dvorak, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was tried by a jury for Attempted Murder. He was found guilty but mentally ill. The court imposed a thirty (30) year sentence.

The facts are: At 10:30 p.m., on February 19, 1981, Monica Rudy, the victim, was walking from her car to her place of employment. She heard her name called and turned to see appellant, a former co-worker. He began to ask her questions and to make threats. When she began to flee, appellant, carrying a shotgun, followed. He fired two shots at Rudy. The first shot struck her in the leg and the second missed. The shots attracted persons to the scene and appellant fled. He was captured later that evening.

Appellant filed a notice of his intent to interpose an insanity defense. The court appointed two psychiatrists to examine appellant. Fifteen months later, for reasons partially attributable to appellant, the re-

ports of the doctors had not been filed with the court. The trial court asked appellant's counsel to contact the doctors so all interviewing could be expeditiously accomplished and the reports prepared prior to the rapidly approaching trial date. A date was set for appellant to be interviewed by Dr. Klassen. Appellant failed to keep that appointment. The following day the trial court held a hearing and issued a bench warrant for appellant's arrest. The court ordered appellant to be held in jail pending his interview with Dr. Klassen. This was done and appellant was released following the interview.

Appellant asserts the trial court erred when it denied his motion for a change of judge. Appellant contends the trial court evidenced its bias when it ordered him held pending the interview with Dr. Klassen. Additionally, he maintains this prejudice was demonstrated by various rulings made by the court during the course of the trial.

■ The record must show actual bias and prejudice against the defendant before a verdict will be reversed. *Smith v. State* (1985), Ind., 477 N.E.2d 857. Adverse rulings and findings by a trial judge are not sufficient reasons to believe the judge has a personal bias or prejudice. *Briggs v. Clinton County Bank and Trust Co.* (1983), Ind.App., 452 N.E.2d 989.

■ We find appellant has not demonstrated actual bias or prejudice. The court's order incarcerating appellant pending the examination was an attempt by the trial court to expedite what had become an unnecessarily protracted proceeding. We find no error in denying the motion for change of judge.

Appellant argues the trial court erred when it permitted the introduction of a videotape of the examination of Dr. Klassen. Appellant was examined by Dr. Klassen and Dr. Berkson. Both doctors submitted reports to the court. However, Dr. Klassen informed the court that he would be unavailable on the trial dates which had been established. Over appellant's objection, the trial court permitted the videotaping of Dr. Klassen's examination prior to the commencement of trial. After appellant had rested his case the trial court called Dr. Berkson and he was examined by the court and counsel. The videotape of the examination of Dr. Klassen was then played.

Appellant objected then and now on the grounds Dr. Klassen's testimony was in contravention of the statutory requirement that the testimony of the psychiatrist follow the presentation of the evidence for the State and for the defense. *See* Ind.Code § 35-36-2-2. He acknowledges the tape was played at the appropriate time; however, he argues he was prejudiced in that the actual testimony was taken in violation of the statutorily prescribed order of proof. He contends he was denied an opportunity to question Dr. Klassen concerning the actual evidence which was adduced at trial and the issues which were raised at trial. He argues the legislature intentionally placed the testimony of the experts at the conclusion of the two cases in chief in order to permit the evidence to be tied together and placed within the psychiatric framework.

He cites *Phelan v. State* (1980), 273 Ind. 542, 406 N.E.2d 237. In *Phelan* the court-appointed expert testified during the State's case in chief. We found this to be error. We concluded that the error was not reversible error as the defendant had failed to establish how he had been prejudiced.

■ We find appellant's argument to be without merit. The testimony of Dr. Klassen was presented to the jury at the appropriate time under the statute. We believe the clear purpose of the statute in requiring this particular order of proof is to separate the evidence relating to the substantive crime from that related to the issue of sanity. We find no error in admitting the videotape of Dr. Klassen.

Appellant contends the trial court erred when it denied his motion for public funds to hire a psychiatrist to assist in his defense. He maintains this professional assistance was necessary to answer pretrial

questions, to help counsel understand appellant's mental disorder and to develop a trial strategy. Indiana court's have held there is no absolute right to have a psychiatrist appointed at public expense. *See Graham v. State* (1982), Ind., 441 N.E.2d 1348. The granting of motions of this nature have been at the discretion of the trial court and reviewable only for an abuse of that discretion. *Graham, supra.*

Recently the United States Supreme Court in *Ake v. Oklahoma* (1985), — U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 held, when a defendant has made a preliminary showing that the defense of insanity will be used, the Constitution requires the State to furnish access to a psychiatrist if the defendant is without resources to obtain this assistance. This Court has found the *Ake* requirements are satisfied when the court complies with the provision of Ind.Code § 35–36–2–2 and the psychiatrists are available for consultations with counsel prior to trial. *Palmer v. State* (1985), Ind., 486 N.E.2d 477.

■ In the case at bar the court ordered the psychiatric examinations. The reports of the doctors were made available to the parties. The record does not reveal the existence of any court order which would have precluded counsel from interviewing the doctors during the interim between their examination and the time they testified at trial. Thus this Court will presume that under the discovery rules the doctors were available for consultations with counsel prior to trial. We repeat the admonishment in *Ake* and *Palmer* that appellant is not entitled to an expert of his choice or one which necessarily agrees with appellant's view of his own sanity. We find no error in the denial of the motion.

Appellant argues the evidence does not support the verdict. He contends the evidence is susceptible to but one interpretation: Appellant was not responsible by reason of insanity for the commission of the offense. He cites the testimony of the lay witnesses as to his bizarre behavior on the day of the incident. One of the medical experts testified that in his opinion appellant lacked substantial capacity to conform his behavior to the law. The second doctor testified as follows:

"Q Based upon your examination of Mr. Thomas on July 1st and July 13th of 1982 and the results of the psychological tests that were conducted on those dates, and based upon your diagnosis of alcoholism and/or borderline personality disorder, do you have an opinion, based upon a reasonable medical certainty, whether on February 19, 1981 Mr. Thomas by reason of alcoholism and/or borderline personality disorder, lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law?

Do you have such an opinion?

"A Well, I have to give you a qualified answer. I would like to have more data on which to base an opinion.

If Mr. Thomas was in the same state that he was when I examined him on February 19th, I would say he did not have such a condition. I would say that he would be a very compulsive and very anxious man, but I do not think that he was insane at the time that I examined him.

However, if the history that he gave me is in fact correct, that he had been drinking heavily—I believe nine days preceding this event—that on the day of the event itself he had consumed a large quantity of beer and some other alcohol, perhaps the equivalent of anywhere from fifteen to thirty beers in alcoholic content, and having been doing that for nine days going, I believe he might have a toxic brain condition, which added to his borderline ego state, could have impaired his capacity to monitor his own behavior, to utilize the judgment of which he would be capable if he were not intoxicated and/or coming off of intoxication.

That is to say if he didn't have a toxic brain condition at that time, it would be very, very difficult for him to conform his behavior, given the cir-

cumstances, to the requirements of the law.

The doctor later testified that, absent a toxic condition, he would say appellant had the ability to appreciate the difference between right and wrong and conform himself to proper social behavior.

The burden of proving insanity is on the defendant. Ind.Code § 35–41–4–1; *Taylor v. State* (1982), Ind., 440 N.E.2d 1109. Appellant is appealing from a negative judgment. Only where the evidence is without conflict and leads inalterably to a conclusion contrary to that reached by the trier of fact will the judgment be disturbed. *Thomas v. State* (1981), Ind., 420 N.E.2d 1216.

■ Various witnesses testified on the issue of appellant's intoxication on the night of the incident. While there was testimony appellant drank alcoholic beverages, appellant's own testimony indicated he drove a car, carried on lengthy conversations and walked several blocks in the time period immediately prior to the shooting. From this evidence, the jury could have found appellant did not suffer from toxic brain syndrome on the night of the incident. Thus the jury could find under Dr. Klassen's analysis that appellant was legally sane at the time the crime was committed. This would place the evidence into conflict. Thus appellant failed to establish his burden of proof.

The trial court is in all things affirmed.

All Justices concur.