James A. STANGER, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 32A01–8903–CR–00105.

Court of Appeals of Indiana, First District.

Nov. 6, 1989.

Arthur L. Logsdon, Elmendorf, Meyer & Freese, Brownsburg, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

James H. Stanger appeals his conviction of four counts of child molesting. We affirm.

Stanger's appeal presents essentially eight issues for our review:

(1) whether statements to the police should have been excluded because they were the product of improper inducement or coercion;

(2) whether the trial court committed fundamental error by informing the jury that Stanger's confession had been given voluntarily;

(3) whether angling of the witness chair toward the jury or the presence of a support person at the side of the child witnesses denied Stanger his rights to confrontation or due process;

(4) whether the trial court's refusal to authorize funds for re-examination of the victims, assistance in evaluating the medical evidence, and expert medical testimony on behalf of the defense, denied Stanger due process;

(5) whether continuances requested by Stanger should have been granted when the State moved to add a count, amend its informations and add witnesses within days of trial;

(6) whether the trial judge's exposure to evidence on a "CHINS" petition required a change of judge;

(7) whether the record of sentencing contains a sufficient statement of aggravating circumstances; and,

(8) whether the trial court's failure to hold a hearing on Stanger's indigency before imposing fines constitutes reversible error.

### I.

First, Stanger challenges the admissibility of statements made while he was in police custody. Arguing the evidence most favorable to his position, Stanger contends his confession was the result of psychological and mental coercion and impermissible promises of leniency. Stanger emphasizes the 65–hour custodial period preceding his interrogation and conditions at the jail as the primary indicia of his statement's involuntary nature.

Often, the admissibility of a particular confession turns upon questions of fact to be resolved by the trial court. This being so, the standard of appellate review is the same as for any other fact sensitive issue. As a reviewing court, we are bound by the trial court's resolution of conflicts in the evidence; if the evidence is conflicting, on appeal, only that evidence which tends to support the trial court's ruling will be considered with the uncontradicted evidence. *Coleman v. State* (1986), Ind., 490 N.E.2d 711, 712–713. *See also, Bowen v. State* (1985), Ind., 478 N.E.2d 44, 45.

■ To admit a confession into evidence in Indiana, the State must prove beyond a reasonable doubt that the confession was voluntary and the defendant knowingly and intelligently waived his rights not to incriminate himself and to have an attorney present. *Coates v. State* (1989), Ind., 534 N.E.2d 1087, 1092, 1093; *Ashby v. State* (1976), 265 Ind. 316, 354 N.E.2d 192, 195. *But cf., Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (federal constitution requires only preponderance standard). A statement or confession is admissible if, after examining the totality of all surrounding circumstances, including the defendant's age, educational level and awareness of *Miranda* rights, and the entire course of police conduct, the trial court finds that the confession was given voluntarily and not through inducement, violence, threats or other improper influences so as to overcome the free will of the accused. *See, Anderson v. State* (1984), Ind., 466 N.E.2d 27, 32. Delay in obtaining a confession is one such factor which must be weighed. *See, Graham v. State* (1984), Ind., 464 N.E.2d 1; *Allen v. State* (1982), Ind., 431 N.E.2d 478.

■ Police officers with the Hendricks County Sheriff's Department arrested Stanger, a 31 year-old male with a ninth grade education, at approximately 4:30 p.m. on Friday, April 8, 1988. Stanger received *Miranda* warnings from the arresting officer and was advised again, in the police car, not to talk to anybody until he talked to an attorney. Stanger was held in the county jail until approximately 10:00 a.m. Monday when the investigating detective removed him for questioning.

Officers questioned Stanger for a total of two hours in a 14' × 14' carpeted room formerly used as the master bedroom of the Sheriff's residence. After the first hour of questioning by one officer, and a 10–15 minute break, questioning resumed by the officer with the arresting detective present to take notes. The officers gave Stanger opportunities to use the restroom but he declined. He was given water to drink and he smoked cigarettes profusely.

The officers read Stanger *Miranda* warnings from a printed card, specifically advising Stanger that he had a right to talk to a lawyer before questioning and to have a lawyer present during questioning. The officers testified that Stanger agreed to answer their questions, did not ask for an attorney and never stopped the questioning. Contrary to Stanger's assertions, the officers denied making any promises of probation, therapy without jail, or jailtime on the weekends. They also denied Stanger's claims that they had agreed to use their friendship with the judge to obtain leniency. Neither officer could recall any screaming or threats of any kind.

The investigating officer testified that Stanger was not interrogated until Monday morning April 11 because she was off-duty over the weekend and overtime hours are discouraged by the department. Yet, the detective felt it necessary upon learning of the incidents at 2:45 Friday afternoon to remove Stanger from the home immediately to protect the children.

The State also offered testimony from the detainee in the cell next to Stanger's rebutting Stanger's claims that other inmates threw pudding and urine on him. The detainee did confirm that the other inmates called Stanger names. However, Stanger made no complaints to jail officials about his treatment.

Upon this record and in spite of the 65–hour delay in initiating questioning, we find the trial court justified in determining, based upon the totality of circumstances, that Stanger's statements were the product of legitimate efforts to obtain admissions and not official coercion, intimidation or overreaching as Stanger has portrayed them. The State's evidence refutes the inference desired by Stanger that the period in custody prior to interrogation was conceived as a means of eliciting a confession. Furthermore, officers warned Stanger three times that he did not need to submit to questioning without first conferring with an attorney. One officer explicitly advised him that it would be best if he waited to talk to an attorney. The purpose of these warnings was to relieve the inher-

ently compelling pressures generated by the custodial setting itself and to ensure that the police did not trick Stanger into a confession. The record supports the conclusion that Stanger despite the warnings made a deliberate decision to talk. Accordingly, there was no error in the trial court's determination that the statements were admissible.

## II.

Stanger contends the trial judge committed fundamental error by twice stating in the presence of the jury that he had determined Stanger confessed voluntarily. The thrust of Stanger's argument seems to be that as the judge of both the law and the facts, the jury was required to decide whether his confession was given knowingly and voluntarily. By informing the jury of his determination on that issue, Stanger argues, the judge implicitly expressed an opinion as to the existence of a confession, unfairly emphasizing and crediting the State's evidence. In so doing, the judge invaded the province of the jury to resolve whether Stanger confessed and whether that confession was knowingly and voluntarily made.[1]

Stanger concedes that ordinarily, to preserve error for appeal, specific and contemporaneous objections must be made at trial and that he expressed no objections to either the court's comments in ruling upon the admissibility of the evidence or to the court's use of the word "confession" in the ruling. In fact, defense counsel referred to Stanger's statements to the police as a "confession" in his objection and in the instruction he tendered dealing with the

statements.[2] Even so, Stanger contends he was denied fundamental due process by the disclosure.

■ Stanger's premise is that the jury must determine for itself whether a confession has been knowingly and voluntarily given.[3] However, this argument fails to distinguish between the competency of his confession as evidence from its probative value, two discrete matters. Indiana law has long followed what is commonly referred to as the orthodox rule in allocating the determinations of competency and credibility of a confession between judge and jury. In *Hauk v. State* (1897), 148 Ind. 238, 46 N.E. 127, *overruled on other grounds*, 234 Ind. 209, 125 N.E.2d 705, the appellant sought to have the court submit the competency of his written confession to the jury upon the ground that it had been made by him under the influence of fear produced by threats. He argued that it was the province of the jury to determine whether the confession was made involuntarily, and if that fact were believed by the jury, to reject the confession as evidence. The court ruled that the exclusion of the confession as incompetent evidence was a preliminary question to be decided by the court; once that legal question had been settled by the court, the appellant was not entitled to have it submitted to the jury for its decision. 148 Ind. at 259, 46 N.E. 127. Upon petition for rehearing, the court explained further:

> The competency of any character of evidence is a question exclusively for the determination of the court. The weight or credibility, however, to which it is entitled is a matter exclusively for the

1. Stanger testified about the circumstances leading to his inculpatory statements. The fact that some inculpatory remarks were made was therefore not contested.

2. As given, Stanger's instruction charged the jury to determine whether Stanger confessed and if so, the weight to be given the confession. In determining the weight to be given the confession, the jurors were advised to consider all the circumstances under which it was made. No charge addressing the voluntariness of the confession was requested by Stanger or given by the court. Stanger did not argue the admissibility of his confession to the jury, but did address

briefly the weight the confession should be accorded under the circumstances.

3. We are unable to discern what Stanger believes to be the source of this duty, whether it be the federal due process clause, the Indiana Constitution or Indiana case law. He may be arguing simply that the jury must assess the voluntariness of a confession in determining its reliability. *Cf., Crane v. Kentucky* (1986), 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636. Stanger's brief does not assist us in this regard as it contains no authority. For future reference, we direct him to Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

decision of the jury in accordance to the rules of law relative to that question.... When the court holds the confession admissible as evidence, it must be received by the jury, and it is not within their province to reject it as incompetent. The credibility, effect, or weight to which it is entitled as, in other evidence, is a question which the jury has the right and must determine for themselves. In deciding this question, they may and ought to look to, and consider all of the facts and circumstances under which the alleged confession was made.

The credibility of the confession being a legitimate subject of inquiry upon the part of the jury, it may be impeached by the defendant in any authorized manner. While the jury may believe it to have been involuntarily made by reason of the hopes or fears of the confessor having been unduly excited, still, if there is evidence which confirms or corroborates it, so as to impress the jury with the belief of its truth to their satisfaction, in that event they would not be justified in rejecting the confession solely upon the ground that they believed it to have been involuntarily made.

In deciding upon the credibility of a confession, or upon the effect, or weight to which, if any, it is entitled, the jury has the right to subject it to the same tests, as far as applicable, as they would in ascertaining the credit or weight due to other evidence, and after performing this duty, if they consider it unworthy of credit, it is their right and duty then to reject it.

148 Ind. at 265, 46 N.E. 127. The Indiana Supreme Court reaffirmed these principles in *Pointon v. State* (1980), 274 Ind. 44, 408 N.E.2d 1255, clarifying that the admissibility of a confession is a matter solely within the province of the court to determine. The voluntariness of a confession is a matter properly before the jury only to the extent that those circumstances affect the confession's weight and credibility. 408 N.E.2d at 1263. *Cf., also, Grassmyer v. State* (1981), Ind., 429 N.E.2d 248; *Long v. State* (1981), Ind., 422 N.E.2d 284 (instruc-

tion concerning State's burden of proving confession voluntary properly refused).

Although the United States Supreme Court has not endorsed the orthodox rule as the *only* constitutional means of allocating responsibility between judge and jury, it has held that the orthodox rule does not offend the dictates of the due process clause as does a rule leaving to the jury the final say in the competency of a confession, *Jackson v. Denno* (1964), 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, or one precluding the jury from evaluating evidence of coercion in its assessment of reliability. *Crane v. Kentucky* (1986), 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636. Accordingly, to the extent Stanger is relying upon the federal constitution as the source of the jury's duty to determine voluntariness of a confession as it relates to competency, his reliance is misplaced.

To the best of our knowledge, Art. I § 19 of the Indiana Constitution, cited by Stanger, has not been interpreted to require trial by jury of evidentiary rulings. Assuming, in any event, that this provision permits the jury to consider the competency of a confession anew before reaching its credibility, Stanger did not urge the jury to undertake that task here or seek an instruction authorizing the jury to disregard his statements if it found them to be involuntary.

▆ Our inquiry turns then, to a consideration of the effect of the jury's exposure to the trial court's voluntariness ruling on its assessment of probative value. In the context of jury instructions, Indiana cases hold that a charge informing the jury that the court has determined a confession to be voluntary is not improper. In *Grassmyer, supra,* the Indiana Supreme Court confronted squarely the claim that disclosure of the trial's court finding of voluntariness made impossible fulfillment of the jury's duty to give the accused's statements as much weight as they deserved under all the circumstances. The court expressly declined to follow those jurisdictions willing to presume that such a disclosure unfairly influences the jury by placing the judge's imprimatur upon the statements. Citing

*Porter v. State* (1979), 271 Ind. 180, 391 N.E.2d 801, *overruled on other grounds*, 274 Ind. 473, 412 N.E.2d 778, in which disclosure of the court's ruling was held to be proper, the court held that when given with instructions on the State's burden of proving guilt beyond a reasonable doubt, the presumption of innocence and the credibility of witnesses, an instruction advising the jury of the judge's determination of voluntariness was not error. 429 N.E.2d at 254.

On this basis, we are also inclined to hold that the court's disclosure of his evidentiary ruling on Stanger's confession was not error. In this case, in addition to the pattern jury instructions on reasonable doubt, presumption of innocence, and credibility of witnesses, the jury was specifically instructed that nothing said by the judge was intended to suggest what facts or verdict it should find, and that the jury should not concern itself with rulings on the admissibility of evidence as those rulings were strictly controlled by rules of law. The court also charged the jury that in determining the law, it should give respectful consideration to the court's instructions. At Stanger's insistence, the court told the jury to consider all the circumstances under which the confession was made. Hence, as in *Grassmyer, supra* and *Porter, id.*, any prejudicial effect was minimized by the court's instructions such as would preclude a determination of fundamental error.

### III.

■ Next we consider two related issues involving the testimony of the child witnesses: whether placement of the witness chair at a slight angle toward the jury and away from the accused denied Stanger the right of confrontation guaranteed by the Sixth Amendment, or Art. 1 § 13 of the Indiana Constitution, and whether the presence of a support person in a chair two to three feet behind the child witness denied Stanger due process.

With respect to the witness chair question, Stanger's complaint is a very narrow one. The procedure utilized here did not prevent Stanger from hearing or seeing the child witnesses. It did not prevent the witnesses from being heard or seen by the judge or jury. Neither did it prevent the witnesses from hearing or seeing Stanger. Stanger's only objection is that the witnesses were not facing directly at him.

Stanger's argument in support of this claimed right to face his accusers directly is solely a textual one. He maintains that both the federal and Indiana constitutions require a literal face-to-face confrontation with the accused. According to Stanger, an arrangement of courtroom furniture which facilitates the witnesses' ability to give testimony to the jury without looking directly toward the accused violates the accused's right to confront the witnesses against him, unless a particularized showing of need has been made by the State. We need not consider whether the procedure utilized here can be sustained by an exception tailored to fit an individualized showing of need because we conclude that Stanger has failed to establish as an initial matter the presence of a constitutional deprivation.

■ There can be no doubt that the Confrontation Clause of the Sixth Amendment guarantees a criminal defendant a face-to-face meeting with the witnesses appearing before the trier of fact. *Coy v. Iowa* (1988), 487 U.S. 1012, 108 S.Ct. 2798, 2800, 101 L.Ed.2d 857. In fact, the Confrontation Clause entitles the accused to look upon the witnesses while being tried and require the witnesses to give testimony in his presence. *Id.* But, as with the other guarantees of the Confrontation Clause, the right to physically face one's accusers is not absolute. The Confrontation Clause does not compel a witness to fix his eyes upon the defendant; he may look elsewhere. 108 S.Ct. at 2802.

Indeed, the U.S. Supreme Court has consistently stated that the clause reflects a *preference* for face-to-face confrontation at trial. *See, e.g. Ohio v. Roberts* (1980), 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597; *Coy, supra* 108 S.Ct. at 2804 (O'Connor, J., concurring). It has expressly rejected a literal interpretation of the Con-

frontation Clause as "unintended and too extreme." *See, Bourjaily v. United States* (1987), 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144, quoting *Ohio v. Roberts, supra* 448 U.S. at 63, 100 S.Ct. at 2537.

Moreover, the court's precedents recognize that the particular vice which gave impetus to the Confrontation Clause was the practice of trying defendants on evidence which consisted solely of *ex parte* affidavits or depositions secured by the examining magistrates, thereby denying the defendant the opportunity to challenge his accusers in a face-to-face encounter *in front of the trier of fact. California v. Green* (1970), 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489; *Mattox v. United States* (1895), 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409. This functional trial right to confront the witnesses before the trier of fact is indispensable and forms the core values furthered by the Confrontation Clause. *See, Kentucky v. Stincer* (1987), 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631; *California v. Green, supra* 399 U.S. at 157, 90 S.Ct. at 1934. As the court observed in *Mattox, supra,* the Confrontation Clause guarantees an

> opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face *with the jury* in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States* (1895), 156 U.S. at 237, 15 S.Ct. at 337, 39 L.Ed. at 409 (Emphasis supplied). Indisputably, then, the federal "right ... to be confronted with the witnesses against him" means more than the right physically to face those who testi-

fy, as Stanger reads the clause. To be sure, it entails an accommodation of the factfinder in its efforts to find the truth.

◼ The Confrontation Clause is fully satisfied when the factfinder can observe the witness's demeanor under cross-examination and the witness testifying under oath and in the presence of the accused. *Delaware v. Fensterer* (1985), 474 U.S. 15, 22, 106 S.Ct. 292, 295, 88 L.Ed.2d 15. Where, as here, the method of eliciting testimony permits jury, witness, and defendant all to see and hear each other and possesses the added virtue of actually facilitating the truthfinding function at the trial,[4] positioning the witness away from the defendant is but a reasonable limitation on the defendant's interest in physical confrontation. As the Court noted with respect to cross-examination, confrontation does not mean in whatever way and to whatever extent a defendant might wish. *See, Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40.[5]

For similar reasons, we conclude no violation of the right of confrontation secured by the Indiana Constitution occurred. As Stanger argues, Art. I § 13 of the Indiana Constitution provides a criminal defendant a right independent of the right secured by the federal constitution "to meet the witnesses face to face...." However, Indiana courts have tended to treat the provision as providing guarantees similar to that embodied in the federal right. As with the federal clause, Indiana courts have regarded the jury's opportunity to view the demeanor of the witness and to cross-examination as critical components of the confrontation right. *Sumpter v. State* (1974), 261 Ind. 471, 306 N.E.2d 95, *cert. denied,* 425 U.S. 952, 96 S.Ct. 1727, 48 L.Ed.2d 196.

---

4. As Justice Blackmun observed in his dissenting opinion in *Coy v. Iowa,* 108 S.Ct. at 2809, the fear and trauma associated with a child's testimony in front of the defendant may so overwhelm the child as to prevent the possibility of effective testimony. In the present case, the record shows Stanger had already been expelled from a CHINS proceeding for violating a no-contact order by attempting to intimidate the children with eye contact.

5. Likewise, resolution of this issue is not affected by this district's decision of September 28, 1989 in *Casada v. State* (Ind.App.1989), 544 N.E.2d 189, interpreting *Coy v. Iowa, supra,* in which we held that the placement of a chalkboard between Casada and the child witness during direct examination violated Casada's Sixth Amendment right of confrontation.

Like its federal counterpart, Indiana's "face to face" language has not been interpreted literally or absolutely. *Sumpter, id.; Miller v. State* (1987), Ind., 517 N.E.2d 64, 71. For example, Indiana's right to meet the witnesses face to face does not require an actual face-to-face meeting of witness and accused in the jury's presence. Requiring a defendant to exercise his right of cross-examination in an atmosphere less traumatizing to the witness than the courtroom setting represents a reasonable restriction on both guarantees recognized implicit in the Indiana clause. *See, Miller, id.* Assuming therefore that Indiana's clause ensures a criminal defendant the right physically to face those who testify against him, we are constrained to hold that as with the federal right, the Indiana Constitution does not confer upon the accused the absolute privilege of compelling a particular seating arrangement.[6]

■ It is not entirely clear to us in what way Stanger believes the presence of a support person two to three feet behind the child witnesses violated his rights to confrontation. However, Stanger's brief does suggest the arrangement undermined his right to a fair trial by invoking juror sympathy for the witnesses and by enhancing the credibility of their testimony. Assuming Stanger is arguing a due process violation, we will briefly address his concerns.

Our legal system places primary reliance upon the adversary system and the presumption of innocence to guarantee a defendant's due process rights under ordinary circumstances. We trust that a fair result can be obtained when a defendant's interests are vigorously represented and jurors adhere to the court's well-chosen instructions. Nonetheless, some courtroom practices impose such a threat to the fairness of the factfinding process as to be inherently lacking in due process. Whenever a courtroom arrangement is challenged as inherently prejudicial, we must

consider whether the practice presents an unacceptable risk that impermissible factors will come into play which might erode the presumption of innocence. *See, Holbrook v. Flynn* (1986), 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525; *Coy v. Iowa, supra.* If the challenged practice is not found inherently prejudicial and the defendant fails to show actual prejudice, the inquiry is over. *Holbrook, supra* at 573, 106 S.Ct. at 1348.

We are not convinced that the practice of allowing a parent or relative to sit near a child witness while the child is testifying is so patently unfair to a defendant as to render a jury verdict untrustworthy. Unlike other courtroom practices condemned in the past, such as prison clothing or shackles and gags, *see, e.g., Illinois v. Allen* (1970), 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353, there is nothing about a person sitting quietly to the side of a witness which is particularly distracting or likely to arouse intense feeling among jurors for a witness or against a defendant. Indiana decisions attest the presence of a mother in the courtroom during a victim's testimony, is not, of itself, inherently prejudicial. *Cf., Ricketts v. State* (1986), Ind., 498 N.E.2d 1222; *Carter v. State* (1980), Ind.App., 408 N.E.2d 790; *Dixon v. State* (1976), 264 Ind. 651, 348 N.E.2d 401.

Stanger has not made an effort to show actual prejudice; accordingly, we find no due process violation.

### IV.

Next, Stanger argues that he was denied due process by the trial court's refusal to expend funds for re-examinations of the victims by a physician chosen by the defense, expert assistance in evaluating the findings of the State's physicians, and expert testimony at trial. Although Stanger concedes the State did not offer clinical evidence that the incidents in fact occurred, he nonetheless maintains that he was enti-

---

**6.** Stanger seems to argue that the only permissible alternative for obtaining testimony from a child victim is to videotape the child's testimony as provided in IND.CODE 35-37-4-8. However, Stanger has argued throughout the trial and

appeal a constitutional violation, not a statutory one. That the legislature has identified one constitutional means of obtaining testimony from a child witness does not necessarily mean that it is the *only* constitutional method.

tled to the opportunity to offer medical evidence of his own and to effectively rebut the State's presentation. Stanger cites *Ake v. Oklahoma* (1985), 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 as authority for these assertions.

In *Ake*, the United States Supreme Court held that when a defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Fourteenth Amendment's due process guarantee of fundamental fairness requires that the State provide access to psychiatric assistance on the issue if the defendant cannot otherwise afford it. 470 U.S. at 74, 105 S.Ct. at 1091. The Court's decision makes clear that an indigent defendant does not have a constitutional right to a psychiatrist of his personal liking or to receive funds to hire his own. The Court holds only that an indigent must have *access* to a competent psychiatrist in preparation of a defense.[7]

Although the *Ake* decision is not directly on point, *Ake* does establish the analytical framework for resolving the question of access at issue here. According to *Ake*, three factors are relevant to our inquiry: (1) the private interest that will be affected by the action of the State; (2) the governmental interest that will be affected if the safeguard is to be provided; and (3) the probable value of the additional procedural safeguards that are sought and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. *Id.* at 77, 105 S.Ct. at 1093.

We agree with Stanger that the government's fiscal interest in denying medical expert assistance is not substantial when considered in light of the compelling interest of both the State and the individual in an accurate disposition. Accordingly, we must carefully evaluate the probable value of the medical assistance sought and the risk of error in the proceeding if such assistance is not obtained. As with the psychiatric assistance sought in *Ake*, the probable value of expert medical assistance in a child molesting case is not the same in every such proceeding. The need for expert medical assistance is heightened when the defendant is able to make an *ex parte* threshold showing that the victims' medical conditions are likely to be a significant factor in his defense.

It is readily apparent from a review of the record that Stanger could not meet this threshold showing. He concedes the medical evidence offered by the State is inconclusive; not one of the physicians who examined the victims could confirm that the molestations occurred. Under these circumstances, the need for assistance in evaluating and testing the soundness of the State's experts' conclusions and the risk that Stanger would be wrongly convicted if he were precluded from refuting this testimony is minimal at best.

Stanger suggests that access to a fourth physician might have cleared him by foreclosing the possibility left open by the State's witnesses that the molestations did occur. However, Stanger presented no empirical evidence to the trial court to substantiate this theory or attest to its reasonableness. The record contains nothing more than Stanger's undeveloped assertions that the requested assistance would be beneficial in this respect. Such a speculative basis does not permit us to find that a deprivation of due process occurred. *Cf., Schultz v. State* (1986), Ind., 497 N.E.2d 531; *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900.

---

7. The fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State is not to duplicate the legal arsenal that may be privately retained by a criminal defendant but only to assure an indigent defendant an adequate opportunity to present his claims fairly. *Ross v. Moffitt* (1974), 417 U.S. 600, 616, 94 S.Ct. 2437, 2446, 41 L.Ed.2d 341. Hence, insofar as Stanger is claiming a constitutional right to an expert of his own choosing or the funds to hire an expert, his claim finds no support in federal constitutional law or state interpretation of that law. *See, e.g., Palmer v. State* (1985), Ind., 486 N.E.2d 477, 482 (defendant entitled to access to expert, not one that sees evidence his way). *Accord, Thomas v. State* (1985), Ind., 486 N.E.2d 531; *Hough v. State* (1988), Ind., 524 N.E.2d 1287.

## V.

Stanger's fifth issue on appeal concerns the trial court's failure to grant his requested continuances when the State moved to amend its informations, add witnesses to its witness list and add a third count involving the victim K.S. in cause number 82C01–8804–CF–79 (hereafter referred to as 79). Stanger's allegation of error primarily affects two of the four counts of which he was convicted.

With respect to count II in cause number 32C01–8804–CF–78 (78), the State alleged initially that Stanger had committed child molesting, a class C felony, by fondling or touching the victim, K.B. On August 11, 1988 the State moved to amend the information to charge child molesting of K.B. as a class B felony, alleging that Stanger had accomplished the act by performing deviate sexual conduct. The court granted the State's motion to amend but denied Stanger a continuance. Then, on August 18, 1989, the court granted the State leave to amend the child molesting count back to its original form as a class C felony again without affording Stanger a continuance.

At this time, the State also added a third count in cause number 79. By this count the State alleged that Stanger had engaged in child molesting as a class C felony by fondling or touching the victim K.S. The matter proceeded to trial five days later on August 23, 1988 despite Stanger's request for a continuance.

The State's motion to amend its witness list was granted by the court on August 11, 1988, twelve days before trial. The State added three names to its list but Stanger objected to only two, alleging in his motion for continuance that he would not have time to depose the witnesses before the trial commenced.

Stanger directs us to IND.CODE 35–34–1–5 which provides that an information charging the commission of an offense may be amended at any time because of an immaterial defect which does not prejudice the substantial rights of the defendant but may be amended in matters of substance or form, and the names of material witnesses added, at any time up to thirty days before

the omnibus date. "Upon permitting such amendment, the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant an adequate opportunity to prepare his defense." I.C. 35–34–1–5(d).

∎ The granting of a continuance requested pursuant to this section is not mandatory but contingent upon a determination that a continuation of the proceedings is necessary to enable counsel to adequately prepare a defense. *Henderson v. State* (1977), 173 Ind.App. 505, 364 N.E.2d 175, *trans. denied; Lemont v. State* (1976), 168 Ind.App. 486, 344 N.E.2d 88, 90. *See also, Radford v. State* (1984), Ind., 468 N.E.2d 219, 222. It is therefore incumbent upon the movant to demonstrate to the satisfaction of the trial judge that a continuance is necessary. *Id.* Although inadequate preparation time attributable to actions of the trial court may implicate a defendant's Sixth Amendment right to effective assistance of counsel and also his right to a fair trial, *see, e.g., Powell v. Alabama* (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; *Marshall v. State* (1982), Ind., 438 N.E.2d 986, fundamental error, which would relieve an appellant from the burden of showing prejudice on appeal, occurs only when it has been established that adequate time was not afforded. *Davis v. State* (1986), Ind., 487 N.E.2d 817, 820. Adequacy of preparation time must be determined on a case by case basis by considering the totality of circumstances, including the complexity of the issues, necessity for pretrial motions, necessity to interview witnesses, and whether the defendant is available to assist in preparation of a defense. *Phillips v. State* (1979), 179 Ind.App. 517, 386 N.E.2d 704, 706.

∎ Stanger had a period of four months to prepare a defense to the charge in cause number 78 of which he was ultimately convicted. Stanger concedes in his reply brief that he engaged in extensive discovery to meet the allegations of the original information in cause number 78. Hence, the amendments to count II in cause number 78 were accomplished with-

out prejudicing Stanger's substantial rights. *Cf., also, Tolbert v. State* (1982), Ind.App., 442 N.E.2d 718; *Clifford v. State* (1985), Ind., 474 N.E.2d 963 (decided before. repeal of I.C. 35–3.1–1–5(c)).

 Likewise, we cannot discern from Stanger's briefs in what way he was harmed by the addition of the witnesses to the State's list twelve days before trial. He has not demonstrated or alleged that he was surprised by the testimony of any particular witness. Neither has he shown that he was unable to meet with the witnesses or discover their intended testimony. We have reviewed the witnesses' testimony and find it to be a repetition of the victims' out-of-court statements, which given the inconsistencies, appears to be more helpful to the defense's position than the State's. Stanger alleged in opposition to the State's motion to add the witnesses that he would not have enough time to depose them, yet he made no showing that the depositions were either necessary or in fact could not be obtained within the twelve-day period. Accordingly, this court must conclude that the denial of the motion for continuance was not an abuse of discretion on this basis either, as Stanger has made no showing of harm. *Cf., Napier v. State* (1971), 255 Ind. 638, 266 N.E.2d 199.

 Lastly, we consider whether, under the circumstances of this case, five days was sufficient time within which to prepare a defense to a new charge of child molesting, alleging fondling or touching of the victim K.S. Originally, in cause number 79, the State charged by count I that in February, 1988, Stanger engaged in child molesting, a class B felony, by performing sexual intercourse with K.S. Count II alleged criminal deviate conduct involving K.S., also a class B felony. In early April, the State amended Count II to class B felony child molesting by performing deviate sexual conduct. The probable cause affidavit attached to the original informations states four distinct factual allegations: that on a Friday night in February, Stanger touched the breasts and genitals of the victim, penetrated the victim's vagina with his fingers, penetrated the victim's genitals with his penis, and penetrated the victim's anus with his penis.

The record contains Stanger's confession as well as K.S.'s deposition. Notes of Stanger's confession reflect Stanger's admission that he "rubbed" K.S.'s bottom. Likewise, K.S. stated in her deposition that Stanger had "touched," "rubbed," and "put his hand" on her vagina and breasts. It is clear, therefore, that even though formal charges had not been sought on this basis, Stanger had notice that an evidentiary basis for the charges existed.

In *Marshall v. State* (1982), Ind., 438 N.E.2d 986, the Indiana Supreme Court considered a claim that the defendant had not been granted an adequate time to prepare a defense to a charge of burglary and as a result had been deprived of effective assistance of counsel. At his arraignment, the defendant requested a speedy trial. The trial was conducted six days later. The court determined that under the circumstances six days for preparation was not inadequate in light of the nature of the case. Both sides engaged in immediate reciprocal discovery and the defendant had access to the three witnesses' statements before trial. The defendant did not move for a continuance which indicated to the court that counsel was prepared.

As in *Marshall,* we are unable to conclude that five days was so inadequate under the circumstances of the case as to preclude Stanger from preparing an adequate defense. Stanger responded to the new charge collectively with the others, arguing that the victims' variations in describing which acts in fact occurred, evidenced by the State's amendment of charges, substantiated his assertion of innocence. Again, Stanger knew the factual basis for the new charge from the time the original informations were filed.

It does not appear from the record that Stanger intended to defend against this count any differently than the others. He has not demonstrated what he would or could have done with the additional time which had not already been done. Consequently, we do not find reversible error here.

## VI.

Stanger argues he was entitled to a change of judge because of the judge's bias and prejudice against him. Stanger filed his motion for change of judge seven days before trial after the trial judge had heard evidence on a CHINS petition involving Stanger's step-children and had ordered the children removed from the Stanger home. Many of the witnesses who testified at the hearing on the petition also testified at Stanger's trial. At the hearing, the trial court ordered Stanger to leave the courtroom, apparently to preclude any further intimidating eye contact with the victims. As other examples of bias, Stanger points to the trial court's rulings on the admissibility of his confession, petition to expend funds, motions for continuances, denial of release on bond pending sentencing and the judge's comments at the sentencing hearing.

■■■■ A ruling on a motion for change of judge in a criminal case is discretionary. Ind. Rules of Procedure, Crim. Rule 12; *Gary v. State* (1984), Ind., 471 N.E.2d 695, 698. The law presumes that a judge is unbiased and unprejudiced. In order to overcome this presumption, the moving party must establish that a trial judge has personal prejudice for or against a party. *Lasley v. State* (1987), Ind., 510 N.E.2d 1340, 1341. Such bias or prejudice exists only where there is an undisputed claim or the judge has expressed an opinion on the merits of the controversy before him. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, 456, *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723.

■■■■ Judges are credited with the ability to remain objective notwithstanding their having been exposed to information which might tend to prejudice lay persons. *White v. State* (1982), Ind., 431 N.E.2d 488, 490. Hence, the mere fact that a defendant has appeared before a certain judge in a prior action or the judge has gained knowledge of the defendant by participating in other actions does not establish the existence of bias or prejudice, particularly when a change of judge is sought in a jury trial. *See, Lasley, supra; Jones v. State*

(1981), Ind.App., 416 N.E.2d 880. Likewise, adverse rulings and findings by the trial judge do not constitute bias per se. *Lasley, supra* at 1341; *Thomas v. State* (1985), Ind., 486 N.E.2d 531, 533. Prejudice must be shown by the judge's trial conduct; it cannot be inferred from his subjective views. *Wallace, supra.*

■■■■ Stanger offers nothing which establishes that the trial judge was biased or prejudiced against him by reason of his knowledge of the facts surrounding the CHINS petition. He does not point to a specific instance when the judge's rulings at his trial were based upon matters learned at the hearing or upon evidence adduced at the hearing which was inadmissible at his trial. Accordingly, on this record, we find no abuse of discretion in denying the motion for change of judge.

## VII.

■■■■ Stanger urges us to remand for resentencing because the trial judge failed to enunciate with sufficient clarity the reasons justifying maximum and consecutive sentences, costs, and restitution to the victims. Stanger also maintains the trial court inappropriately considered his wife's continued support and belief in his innocence, and viewed his protestations of innocence as indicative of a lack of remorse. Finally, Stanger contends the trial court could not properly consider the victims' ages in aggravation because the age of each victim was a circumstance needed to be proved by the State to establish the crime.

We note initially that the judge had a considerable amount of information available to him in this case with which to formulate an appropriate sentence. The court received a comprehensive sentencing recommendation from the probation investigator as well as an alternative sentencing recommendation on behalf of the defense, each proposal containing psychological evaluations and assessments concerning Stanger's prospects for treatment. Both reports suggest that Stanger could be benefitted by treatment only if he admits guilt.

The report prepared for the probation department portrays Stanger as an individual who takes what he needs from others by denying that there are consequences of his actions for others and who demonstrates no remorse concerning those consequences. Indeed, the report states that the Stanger family as a unit invests more energy in denial than change. The report gives Stanger a poor prognosis and recommends maximum confinement because of the high risk Stanger will repeat these behaviors.

In the context of this record, which we may consider, *Mahla v. State* (1986), Ind., 496 N.E.2d 568, 574, we find the court's statement to be sufficient and its sentence reasonable. It is clear from the manner in which the judge addressed Stanger that he found Stanger's professed willingness to submit to treatment disingenuous given the opportunities presented to Stanger throughout the proceedings to obtain counseling for himself and to act in the interests of his step-children. The court's references to Stanger's "total disregard for [his] victims," the position taken by Stanger's wife in opposition to her children, and the legal mechanisms utilized by Stanger, e.g. multiple interviews and depositions of the victims, are consistent with the psychological profile contained in the record. Thus, we perceive the court's remarks were not intended to be viewed as specifying aggravating factors but as the court's own observations evidencing the resistant nature of the family structure and Stanger's own recalcitrant character, itself relevant in determining the need for correctional or rehabilitative treatment best provided by commitment to a penal facility, the likelihood of repetitive criminal behavior and ultimately, the need for the maximum sentence contemplated by the legislature. *Compare, Duffitt v. State* (1988), Ind.App., 519 N.E.2d 216 (Sullivan, J., concurring), *affirmed summarily,* Ind., 525 N.E.2d 607.

To the extent that the court's comments indicate as Stanger characterizes them, a finding of lack of remorse, we note that as in *Guenther v. State* (1986), Ind., 501 N.E.2d 1071, in which lack of remorse was considered an appropriate factor in aggravation, the record contains evidence that Stanger at one time admitted he had engaged in acts constituting child molesting with the victims, as they had accused him. (R. 1565). *See also, Ballard v. State* (1988), Ind., 531 N.E.2d 196.

■ The sentencing court also cites as an aggravating factor the age of the victims but does not expound further. IND. CODE 35–38–1–7(a) provides that in determining the sentence to be imposed for a crime, the court shall consider whether the victim was less than twelve years of age. Subsection (b) specifically lists as an aggravating circumstance the fact the victim is under twelve. However, when the victim's age comprises a material element of a crime, it may not also constitute an aggravating circumstance to support an enhanced sentence. *Stewart v. State* (1988), Ind., 531 N.E.2d 1146, 1150. Nonetheless, the trial court may properly consider particularized circumstances of the factual elements as aggravating factors. *Id.* Here, the trial court stated the statutory factor of age without addressing the circumstances which rendered it particularly aggravating in this case. Hence, we agree with Stanger that the age of the victims alone will not sustain the enhancement.

Even so, Indiana courts have repeatedly held that a single aggravating factor will support an enhanced sentence on appeal. *See, e.g., Stewart, id.; Guenther, supra.* Although not explicitly in the language of the statute, the record offers three such reasons: the risk that Stanger will commit another crime; Stanger's need for correctional or rehabilitative treatment best provided by commitment to a penal facility; and/or Stanger's lack of remorse. This court, in exercising appellate review of sentencing, will not revise a sentence authorized by statute unless no individual could find the sentence appropriate to the particular offense and offender. Rules for Appellate Review of Sentences, Rule 2. Surely, that is not the case here. We find the trial court has made a reasonable determination as to sentencing.

### VIII.

■ Lastly, Stanger cites as error the trial court's failure to conduct a hearing on

Stanger's indigency before imposing a $10,000 fine on each of the four counts. We acknowledge that I.C. 35–38–1–18(a) requires such a hearing, and that the trial court imposed the fines here without first determining indigency, rendering that portion of the sentencing order unenforceable. However, since, as in *Marshall v. State* (1987), Ind.App., 505 N.E.2d 853, no effort is being made to enforce the fine or coerce payment, Stanger has not argued reversible error. *Cf., also, Meeker v. State* (1979), 182 Ind.App. 292, 395 N.E.2d 301.

Judgment affirmed.

BAKER, J., concurs.

STATON, J., concurs in result with separate opinion.

STATON, Judge, concurring.

I concur in result on the issue of confrontation. If the right to confrontation has been denied, it is not necessary to show prejudice. Prejudice is presumed. However, in the present case, I would hold that Stanger's right to confrontation has not been denied him. The Majority correctly points out that the right to confrontation is not absolute and is not to be taken literally.

As Justice O'Connor pointed out in *Coy v. Iowa* (1988), 487 U.S. 1012, 108 S.Ct. 2798, 2804, 101 L.Ed.2d 857:

> While I agree with the Court that the Confrontation Clause was violated in this case, I wish to make clear that nothing in today's decision necessarily dooms such efforts by state legislatures to protect child witnesses. Initially, many such procedures may raise no substantial Confrontation Clause problem since *they involve testimony in the presence of the defendant.* (Emphasis added.)

This is clearly a recognition of the former practice of *ex parte* affidavits and the former practice of taking depositions by examining magistrates which excluded the defendants' cross-examination of the witness.

In *Coy, supra,* at 2804, Justice O'Connor further pointed out that:

> But it is also not novel to recognize that a defendant's "right physically to face those who testify against him" ... even

if located at the "core" of the Confrontation Clause, is not absolute, and I reject any suggestion to the contrary in the Court's opinion.